JULIAN P. DONOHUE *v.* ZONING BOARD OF APPEALS OF THE TOWN OF NORWALK

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued October 4—decided November 10, 1967

*Edward J. Zamm,* special counsel, with whom, on the brief, was *Thomas A. Flaherty,* corporation counsel, for the appellant (defendant).

*Robert N. Grosby,* for the appellee (plaintiff).

RYAN, J. The plaintiff, the owner of land located on Ely Avenue in the city of Norwalk, applied to the zoning inspector for a permit to erect a commercial building on his land. On June 14, 1966, the application was denied on the ground that the granting of the permit would be in conflict with the Norwalk zoning regulations. On June 15, 1966, the plaintiff appealed from this decision to the defendant board. The plaintiff's appeal was heard by the board on July 21, 1966, and, on October 6, 1966, it was denied. From this decision the plaintiff appealed to the Court of Common Pleas, alleging that the action of the board was erroneous and void and that the board was without jurisdiction because of its failure to decide the appeal within sixty days after the hearing in accordance with § 8-7 of the General Statutes (Rev. to 1966). He also alleged that the purported decision of the board was contrary to law and was an erroneous application of § 15 of the Norwalk zoning regulations. The trial court sustained the plaintiff's appeal and rendered judgment accordingly. From this judgment the board appealed to this court.

The judgment file recites the plaintiff's prayers for relief as follows: "1. A judgment declaring that the decision of the defendant board denying the appeal and sustaining the action of the Building and Zoning Inspector more than sixty (60) days from the date of hearing was without jurisdiction, erroneous and void. 2. A judgment directing the board to reverse the action of the Building and Zoning Inspector and directing him to grant the permit. 3. A judgment directing the Building and Zoning Inspector to grant the permit applied for by the plaintiff."

It then recites that the court, having heard the

parties, found the issues for the plaintiff and sustained the plaintiff's appeal. Thus, the judgment is that the board was without jurisdiction to render its decision. Obviously, if the court found that the board was without jurisdiction, there would be no occasion to consider whether the board acted illegally or in excess or abuse of its powers. Since the court properly made no finding, we turn to its memorandum to ascertain the legal conclusions upon which it based its judgment. *Rockville* v. *Public Utilities Commission,* 146 Conn. 1, 6, 146 A.2d 916; see *In re Application of Koenig,* 152 Conn. 125, 130, 204 A.2d 33; *Treat* v. *Town Plan & Zoning Commission,* 145 Conn. 136, 140, 139 A.2d 601; *Gordon* v. *Zoning Board,* 145 Conn. 597, 600, 145 A.2d 746; *State ex rel. Haverback* v. *Thomson,* 134 Conn. 288, 291, 57 A.2d 259.

The court's memorandum of decision indicates that the judgment was based on its interpretation of § 15 of the Norwalk zoning regulations. As a result of its construction of the regulations, it concluded that the action of the board in denying the application of the plaintiff was illegal and arbitrary and that the appeal should be sustained. The appeal was decided on the merits, and the court did not pass on the plaintiff's claim that the board was without jurisdiction because of its failure to decide the appeal within sixty days after the hearing.

Despite the representation of counsel in argument that, in zoning matters, the city of Norwalk was acting under the provisions of a special act of the General Assembly, it is quite clear that it has been acting under the General Statutes since 1929, and that chapter 124 of the General Statutes applied. In zoning cases it is, at times, of importance to distinguish between municipalities acting under special

acts and those operating under the General Statutes. *Puskarz* v. *Zoning Board of Appeals,* 155 Conn. 360, 364, 232 A.2d 109; *Gregorio* v. *Zoning Board of Appeals,* 155 Conn. 422, 431, 232 A.2d 330. This court should not be required to do the work of counsel in making this determination.

It is admitted in the pleadings that the date of the hearing before the board was July 21, 1966, and that the board rendered its decision on October 6, 1966. Section 8-7 of the General Statutes (Rev. to 1966) provides, in part, as follows: "Said board shall decide such appeal within sixty days after the hearing." The plaintiff urges that the statute makes it mandatory for the board to decide the appeal within sixty days after the hearing, that the board's decision, rendered more than sixty days thereafter, was void, and that the board was therefore without jurisdiction. In determining whether a statute is mandatory or merely directory, the most satisfactory and conclusive test is whether the prescribed mode of action is of the essence of the thing to be accomplished or, in other words, whether it relates to matter of substance or to matter of convenience. *Gallup* v. *Smith,* 59 Conn. 354, 358, 22 A. 334. Viewed in the light of this test, the provision of § 8-7 is directory and not mandatory. It relates to procedure. The language is affirmative in character and such as would naturally be used to secure the prompt and proper dispatch of the appeal. *Winslow* v. *Zoning Board,* 143 Conn. 381, 384, 122 A.2d 789. The statute contains nothing which expressly invalidates a belated decision or which inferentially makes compliance therewith a condition precedent. The provision is not of the essence of the thing to be accomplished. *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn.

57, 68, 82 A.2d 345. There is no statutory limitation of time, the nonobservance of which renders the board's decision voidable. *Wilson Point Property Owners Assn.* v. *Connecticut Light & Power Co.,* 145 Conn. 243, 267, 140 A.2d 874; *Danbury Rubber Co.* v. *Local 402,* 145 Conn. 53, 56, 138 A.2d 783; *Spencer's Appeal,* 78 Conn. 301, 303, 61 A. 1010.

The plaintiff is the owner of land which fronts on Ely Avenue and is approximately ninety feet wide and 200 feet deep. The lot is divided into two separate zone designations. The front 100 feet from the street line lies in a C residence zone. The zone line runs parallel to and 100 feet distant from Ely Avenue. The rear half of the property lies in a light industrial 1 zone. The plaintiff's application for a permit to erect a commercial building conformed to light industrial 1 zone regulations but did not conform to the C residence zone regulations. It is the claim of the plaintiff that paragraph 3 of § 15 of the zoning regulations is applicable, and he invoked its provisions, claiming that, since his lot is in the interior of a block, he is permitted to use the entire lot in accordance with the use regulations of the light industrial 1 zone. The pertinent sections of the regulations are set forth in a footnote.[1]

The board contends that the language of para-

---

[1] "[Norwalk Zoning Regs. § 15, ¶ 3 (1929, as amended).] A lot situated in the interior of a block and divided by the zone boundary line into two different zones may in so far as it is situated at least one hundred feet from any street bounding the block in which it is located, be used in accordance with the use regulations of the less restricted zone into which the lot is divided."

"[§ 1 (c)] A 'lot' is a parcel of land occupied or designed to be occupied by one building and the accessory buildings or uses customarily incident to it, including such open spaces as are arranged and designed to be used in connection with such building.

"[§ 1 (d)] A 'corner lot' is a parcel of land not over fifty feet

graph 3 of § 15 prohibits the use of the plaintiff's land in accordance with the less restricted zone regulations within 100 feet of any and all streets bounding the block, including the street on which the lot fronts. In interpreting the phrase "may in so far as it is situated at least one hundred feet from any street bounding the block in which it is located," the trial court construed the words "any street" to mean one street, no matter which one. It concluded that under § 15 all of the plaintiff's land can be used in accordance with the use restrictions of the light industrial 1 zone.

"The word 'any' has a diversity of meanings and may be employed to indicate 'all' or 'every' as well as 'some' or 'one.' 3A Words and Phrases (Perm. Ed.). Its meaning in a given statute depends upon the context and subject matter of the statute. In *New York, N.H. & H.R. Co.* v. *Stevens*, 81 Conn. 16, 21, 69 A. 1052, we held it to be too comprehensive a word to receive a narrow construction." *Muller* v. *Town Plan & Zoning Commission*, 145 Conn. 325, 328, 142 A.2d 524. The adoption of the zoning regulations in question was basically a legislative process, and, in interpreting the language of the regulations, our function is to determine the expressed legislative intent. *Schwab* v. *Zoning Board of Appeals*, 154 Conn. 479, 482, 226 A.2d 506; *Park Regional Corporation* v. *Town Plan & Zoning*

---

in width and not over one hundred feet in depth at the junction of and fronting on two intersecting or intercepting streets.

"In so far as the size of a parcel located at the junction of and fronting on two intersecting or intercepting streets is in excess of these dimensions, its excess area shall be treated the same as an interior lot.

"[§ 1 (e)] An 'interior' lot is a lot other than a corner lot.

"[§ 1 (f)] The 'depth of a lot' is the mean distance from the street line of the lot, measured in the general direction of the side lines of the lot."

*Commission,* 144 Conn. 677, 682, 136 A.2d 785. Legislative intent is not to be found in an isolated sentence. The enactment must be examined in its entirety and its parts reconciled and made operative so far as possible. *Garbaty* v. *Norwalk Jewish Center, Inc.,* 148 Conn. 376, 382, 171 A.2d 197.

In the plaintiff's brief and argument, considerable emphasis was placed on the case of *Spesa* v. *Zoning Board of Appeals,* 141 Conn. 653, 109 A.2d 362. The language of the pertinent part of § 13 of the New London zoning regulations in that case is identical with paragraph 3 of § 15 of the Norwalk regulations. The factual situation, however, was quite different from the instant case. The lot in *Spesa* extended about 600 feet from route 1 to Vauxhall Street. For a depth of 150 feet from route 1 it was in a business 1-A zone. The rest of the lot was in a residence A zone. Permits were issued for the erection of two multifamily dwellings on the lot, to extend from a line thirty-five feet from route 1 to a line 125 feet from Vauxhall Street in the more restricted zone. A buffer zone which exceeded the requirements of the regulations was thus maintained, and this court sustained the action of the board. The *Spesa* case does not support the plaintiff's claim.

The obvious purpose of § 15 of the Norwalk regulations is to permit a use in accordance with the use regulations of the less restricted zone, subject to a buffer zone of at least 100 feet in the more restricted zone. To construe "any" as meaning "one" would permit the extension of the less restricted zone without limit, as long as the lot in question is at least 100 feet from any one street bounding the block, regardless of the zone classification of the land abutting the street selected. Such a

construction would destroy uniformity in zoning and bring about an unreasonable result. We conclude therefore that Ely Avenue, the street on which the plaintiff's lot fronts, is embraced within the language of the regulations "any street bounding the block."

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal.

In this opinion the other judges concurred.