JOHN F. CARR, JR. *v.* ELLIOTT WOOLWICH ET AL.
(4019)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued March 14—decision released June 17, 1986

*Theresa D'Alton,* with whom were *Roland F. Moots, Jr.,* and, on the brief, *Thomas P. Byrne,* for the appellants (defendants).

*David B. Losee,* with whom were *Wesley W. Horton* and, on the brief, *Lawrence J. Kiel,* for the appellee (plaintiff).

BORDEN, J. This appeal involves the issue of whether the failure of the defendant planning and zoning com-

mission to act upon the plaintiff's application for a zoning permit for a permitted use of his property within the time constraints set by General Statutes § 8-7d results in the automatic approval of the application. The trial court held that it did so result. We find no error.

The facts are not in dispute. On October 11, 1983, the plaintiff filed with the defendant Bridgewater planning and zoning commission an application for a zoning permit pursuant to § 2.2.3 of the Bridgewater zoning regulations, together with a site development plan, for the construction of a sixty unit hotel on his property located in a commercial C zone. The regulations provide that in a commercial C zone the uses "shall conform to and continue to observe" certain standards and criteria regarding such matters as air contaminants, sound levels, vermin control, waste disposal, fire control, storage of certain material and off-street parking. The regulations also provide in relevant part that "[a] Site Development Plan shall be submitted in four copies for [the commission's] approval, which Site Plan shall show all applicable data required." A hotel is a permitted use in a commercial C zone, subject, however, "to conformance with the [relevant provisions] above." The plaintiff's application to the commission was accompanied by a detailed site development plan and by a two page document. The application, the site development plan and the accompanying two page document purported to indicate the proposed hotel's compliance with the applicable zoning regulations.

The commission considered the plaintiff's application at its regularly scheduled meeting on December 7, 1983, and voted to return the plaintiff's application and accompanying documents to him. On January 4, 1984, the plaintiff appealed to the Bridgewater zoning board of appeals, claiming that the commission's action in returning his application to him was improper. On

March 19, 1984, the board directed the commission to process the plaintiff's application and site development plan. At its regularly scheduled April 14, 1984 meeting, the commission noted its receipt of the board's decision, but nonetheless failed to take any further action on the plaintiff's application. It still has not done so.

The plaintiff brought this mandamus action against the named defendant, who is the chairman of the commission, and against the commission itself, claiming that, pursuant to General Statutes §§ 8-7d (b)[1] and 8-3 (g),[2] he was entitled to a certificate of approval of his application, site development plans and maps submitted on October 11, 1983. The trial court held that, pursuant to the provisions of General Statutes §§ 8-7d (b) and 8-3 (g), the plaintiff was entitled to the mandamus order he sought. It also held that the failure of the plaintiff to submit, with his application, the town sanitarian's written approval of the septic system did not render his application incomplete so as to deny him the mandamus.[3] This appeal followed.

[1] General Statutes § 8-7d (b) provides: "Whenever the approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations for a proposed building, use or structure, a decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan. The applicant may consent to one or more extensions of such period, provided the total period of any such extension or extensions shall not exceed two further sixty-five day periods, or may withdraw such plan."

[2] General Statutes § 8-3 (g) provides in pertinent part: "The zoning regulations may require that a site plan be filed with the commission or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations. A site plan may be modified or denied only if it fails to comply with requirements already set forth in the regulations. Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. A certificate of approval of any plan for which the period for approval has expired and on which no action has been taken shall be sent to the applicant within fifteen days of the date on which the period for approval has expired."

[3] The trial court also rendered judgment in the plaintiff's favor in a zoning appeal which was tried together and decided with his mandamus action. In that case, the court sustained the plaintiff's contention that the attempt

The defendants argue that the court erred because (1) the plaintiff did not establish that he complied with the various requirements established pursuant to the governing zoning regulations, (2) there is no time requirement in the general statutes or the zoning regulations for approval of a zoning permit, as opposed to approval of a site plan, and they emphasize that the plaintiff's application was for a zoning permit and not for site plan approval, and (3) the absence of the town sanitarian's written approval of the septic system rendered the plaintiff's application incomplete. We disagree.

## I

We first consider the defendants' argument that the General Statutes contain no requirement that a zoning commission act within any specified time limits on an application for a *zoning permit,* as opposed to an application for approval of a site plan.[4] Because this argument effectively rests upon the broad assumption that the absence of a specific provision in the General Statutes governing time limitations upon a zoning commission's duty to act on an application for a zoning permit necessarily requires the conclusion that the legislature specifically intended not to limit such actions, we must carefully analyze the statutory scheme to determine the intent of the legislature. In doing so, we look both to the legislative history of General Statutes § 8-7 and related provisions, which provide time limitations in most planning and zoning situations, and to the judicial gloss upon that legislation.

of the defendants to amend the zoning regulations, so as to delete the sections permitting the plaintiff's proposed commercial use of his property, was invalid. The defendants did not appeal from that decision of the trial court.

[4] We reject the defendants' related argument that the zoning regulations contain no provision for site plan approval. This argument simply ignores the provision which required the plaintiff to submit a "Site Development Plan . . . for [the commission's] approval, which Site Development plan shall show all applicable data required."

Prior to 1977, General Statutes § 8-7, which governs appeals to zoning boards of appeals, provided that "[s]aid board shall fix a reasonable time for the hearing of any appeal and . . . shall decide such appeal within sixty days after the hearing." General Statutes (Rev. to 1966) § 8-7. In *Donohue* v. *Zoning Board of Appeals,* 155 Conn. 550, 235 A.2d 643 (1967), the plaintiffs sought to invalidate a decision of the zoning board of appeals on the ground that it had been rendered beyond the sixty day time period and thus was void. The Supreme Court held, however, that because the "statute contains nothing which expressly invalidates a belated decision or which inferentially makes compliance therewith a condition precedent," the time period was "not of the essence of the thing to be accomplished" and was "[merely] directory and not mandatory." Id., 554.

In 1968, the year after *Donohue* was decided, the Supreme Court decided *Finn* v. *Planning & Zoning Commission,* 156 Conn. 540, 244 A.2d 391 (1968). There the court held that, in the context of an application for a subdivision approval, the language of General Statutes § 8-26 requiring commission action within sixty days after submission and providing that the " 'failure of the commission to act thereon shall be considered as an approval' . . . was to ensure prompt and expeditious action on subdivision applications for the protection of the subdivider . . . [and that the] language of the statute is mandatory." Id., 544. After *Finn,* therefore, the state of the law was that the statutory time period governing appeals to zoning boards of appeal was directory; *Donohue* v. *Zoning Board of Appeals,* supra; whereas, the statutory time period for applications for subdivision approval was mandatory. *Finn* v. *Planning & Zoning Commission,* supra. There was no definitive statement regarding the time period governing other land use or planning applications, such as the

application in the present case for a zoning permit. Subsequent to *Donohue,* the legislature, in 1971, amended General Statutes § 8-7 to provide that the board hear the appeal "within sixty-five days after receipt of the notice of appeal," and that the board "decide such appeal within sixty-five days after the hearing." Public Acts 1971, No. 71-862, § 4.

In 1977, the legislature enacted Public Acts 1977, No. 77-450 (the 1977 act). Section 3 of the 1977 act[5] amended the language which had been held in *Donohue* to be directory and substituted, for the 1971 amendment's language, "within sixty-five days after receipt of the notice of appeal," the language, "within the period of time permitted under section 8-7d, as amended by section 4 of this act. . . ." It also eliminated from § 8-7 the following language: "Said board shall decide such appeal within sixty-five days after the hearing." Thus, section 3 of the 1977 act keyed the disposition of matters before zoning boards of appeals directly into the time periods in General Statutes § 8-7d, as amended by § 4 of the 1977 act. The question remains, however, whether the legislature also intended that these amendments effectively rendered the governing time period as having a uniform, mandatory legal effect. To answer this question, we look first to section 4 of the 1977 act.

---

[5] Sections 1 and 2 of the 1977 act amended General Statutes §§ 8-3 and 8-3c. General Statutes § 8-3 governs, inter alia, the procedure by which a "zoning commission shall provide for the manner in which [zoning] regulations under section 8-2 and the boundaries of zoning districts shall be respectively established or changed." The 1977 act provided that "the period of time permitted under section 8-7d, as amended by section 4 of this act" shall govern petitions for change in the zoning regulations or the boundaries of zoning districts. Public Acts 1977, No. 77-450, § 1.

General Statutes § 8-3c governs requirements for special permits or special exceptions. The 1977 act provided that the period of time under § 8-7d, as amended by section 4 of the act, would govern such requirements. Public Acts 1977, No. 77-450, § 2.

Prior to the 1977 act, General Statutes § 8-7d did no more than provide that "in all matters wherein a formal application, request or approval must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals, the date of receipt of such application" would be measured from the agency's next regularly scheduled meeting or thirty-five days from the application date, whichever was sooner. Section 4 of the 1977 act substantially amended General Statutes § 8-7d.

Subsection 4 (a) of the 1977 act created what is essentially now General Statutes § 8-7d (a),[6] with some differences which are not relevant to this appeal. That subsection provided that, except as provided in subsection (b), whenever a "petition, application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals . . . and a hearing is required," the hearing shall commence within sixty-five days from the receipt of the application, the hearing shall be completed within thirty days after the hearing begins, and the decision shall be rendered within sixty-five days after the completion of the hearing. It also provided that the applicant may consent to an extension of any such period but not for

---

[6] General Statutes § 8-7d (a) provides: "Except as provided in subsection (b) of this section, in all matters wherein a formal petition, application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter and a hearing is required on such petition, application, request or appeal, such hearing shall commence within sixty-five days after receipt of such petition, application, request or appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearing. The petitioner or applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of any such period shall not be for longer than the original period as specified in this subsection, or may withdraw such petition, application, request or appeal."

more than double the period specified, or the applicant may withdraw the application.[7]

Subsection 4 (b) of the 1977 act addressed the situation involving approval of a site plan application. It provided that approval thereof "shall be rendered within sixty-five days after receipt of such site plan. . . . " Public Acts 1977, No. 77-450, § 4 (b). It also provided that the applicant may consent to an extension of such period, limited to two further sixty-five day periods, or may withdraw such plan. Id.

Subsection 4 (d) of the 1977 act exempted from the provisions of subsection 4 (a) "any action initiated by any zoning or planning and zoning commission regarding adoption or change of any zoning regulation or boundary." Public Acts 1977, No. 77-450, § 4 (d).

Sections 5, 6 and 7 of the 1977 act amended General Statutes §§ 8-26, 8-26d and 8-28, which govern matters before planning commissions. These sections of the public act left intact, however, the language which had, in *Finn,* been construed as mandatory. The general effect of these amendments was to establish time limits, and extensions thereof by consent of the applicants, regarding hearings and decisions of planning commissions, which limits were the same as those provided under section 4 for approval of applications or petitions to zoning commissions, zoning boards of appeals, and combined planning and zoning commissions. Public Acts 1977, No. 77-450, §§ 5 and 6.

It is clear from the language, structure and legislative history of the 1977 act, and from its subsequent judicial gloss, that it was intended to make uniform the time periods within which all the zoning and planning

---

[7] Public Acts 1978, No. 78-104, § 1, subsequently amended General Statutes § 8-7d (a) by providing that the applicant may consent to "one or more extensions" of any such period, provided "the total extension of such period shall not be for longer than the original period as specified. . . . "

matters covered by it were to be heard and decided. It is equally clear that it was intended to make uniform the legal effect of a violation of those time standards. Sections 1 through 4 of the act specifically keyed the particular time periods for zoning matters into the provisions of General Statutes § 8-7d as amended by the act. Sections 5, 6 and 7 of the act covered planning matters. While leaving intact the language held mandatory in *Finn*, these latter sections added further language to General Statutes §§ 8-26, 8-26d and 8-28 which was identical to that used in section 4 of the act covering zoning matters. The remarks of the chief sponsors of the bill on the floor of the General Assembly strongly buttress this reading of the act.[8] It would be bizarre

---

[8] Senator Louis Cutillo remarked: "Mr. President, the bill imposes . . . uniform time periods for commencing hearings, completing hearings and rendering decisions for specified zoning petitions. Applications, requests or appeals before a zoning commission. The combined planning and zoning commission or a zoning board of appeals. It imposes uniform time periods for commencing hearings, completing hearings and rendering decisions in all matters when a formal application request or appeal is submitted to a planning commission. It requires the decision on an application for approval or a site plan be rendered within 65 days after date of receipt of the site plan and permit the extension of such time period for an additional 130 days but only with the consent of the applicant." 20 S. Proc., Pt. 8, 1977 Sess., pp. 2999–3000.

Representative Janet Polinsky stated: "This bill concerns itself only with the subject of uniformity of time limits in the existing planning and zoning statutes. This bill would impose uniform time periods for commencing public hearings and rendering decisions for specific zoning petitions, applications and requests or appeals before zoning commissions, planning commissions, combined planning and zoning commissions or zoning board of appeal. In other words, whenever a public hearing is held, whether on a request for a zone change, for a subdivision approval, a special permit, a special exception or whatever, the time limits would all be uniform. As the law reads now, the deadlines are neither uniform nor clear. Simply stated, this bill proposes that all public hearings must be held within . . . 65 days of official receipt of a request for such hearing; further, that the public hearing shall be completed within thirty days after it begins and this thirty day period, would, of course, only apply in those very few cases where the subject matter is so controversial as to cause the hearing to be conducted over several sessions. And lastly, that the decision must be rendered within 65

to conclude that the legislature went to such lengths to make all these time limits uniform and, at the same time, that it did not intend to make equally uniform the results of a departure from those time limits.

General Statutes § 8-7d (a) covers, with two exceptions discussed below, "all matters wherein a formal petition, application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter [124, entitled "Zoning,"] and a hearing is required on such petition, application, request or appeal. . . ." See footnote 6, supra. Thus, this broad and sweeping language makes clear the legislature's intent to cover, except for the two exceptions, all zoning matters involving a petition, application, request or appeal to the specified agencies, which require a hearing. The hearing on such matters must begin within sixty-five days and terminate within an additional thirty days. The decision must be rendered within sixty-five days after completion of the hearing. As under subsection (b), the applicant may, under subsection (a), consent to one or more extensions of any of these periods, provided that the total extension or extensions may not be for more than the specified period, and the applicant may withdraw the application. If the decision is not rendered within these time periods, the application is deemed to have been approved.

This reading of General Statutes § 8-7d (a) as providing for uniform and mandatory time limits for zoning matters is buttressed by the subsequent judicial gloss placed on General Statutes § 8-7d by the Supreme Court in *Vartuli* v. *Sotire,* 192 Conn. 353, 472 A.2d

days after the public hearing is completed. This bill would also permit extensions of each of the uniform time periods specified but only where the applicant consents to such extension and in no event could an extension exceed twice the time period specified." 20 H.R. Proc., Pt. 6, 1977 Sess., pp. 2513–14.

336 (1984). In *Vartuli,* the court was faced with the issue of whether a coastal site plan review which, pursuant to General Statutes § 22a-109 (e), is "subject to the same statutory requirement as subsection (b) of § 8-7d for the purpose of determining the time limitations on the zoning commission and reaching a final decision," is also subject to "the presumption of § 8-3 (g) which clearly makes the sixty-five day period [of General Statutes § 8-7d (b)] mandatory." *Vartuli* v. *Sotire,* supra, 359. The court held that, reading General Statutes §§ 22a-109, 8-7d (b) and 8-3 (g) "together compels the conclusion that, as in *Finn,* the legislature has expressly made approval of a coastal development plan mandatory upon failure to disapprove an application within the specified time." Id., 362.

The significance of *Vartuli* for this case, however, lies in its alternative holding. "Furthermore, even if we were to conclude that § 8-3 (g) is not incorporated by reference into the time limitations of the Coastal Management Act, the plaintiff could still prevail under the *Donohue* test. It is indisputable that § 22a-109 incorporates the provisions of § 8-7d (b); that subsection, read in its entirety, imposes time constraints that are mandatory. After setting forth the sixty-five day period for the zoning board to render its decision, § 8-7d (b) goes on to provide that '[t]he *applicant* may consent to one or more extensions of such period . . . .' (Emphasis added.) If, as the defendants claim, § 8-7d (b) did not mandate a decision by the zoning board within sixty-five days, why would the board ever need the applicant's consent to an extension? 'In construing a statute, each part should be treated as significant and necessary; every sentence, phrase and clause is presumed to have a purpose.' . . . The consent clause satisfied the second prong of the *Donohue* test, that statutory language is mandatory 'which inferentially makes compliance [with the statute] a condition prece-

dent.' *Donohue* v. *Zoning Board of Appeals,* supra, 554. Given the consent clause, § 8-7d (b) is as mandatory as the subdivision statute in *Finn.*" (Footnote omitted; citations omitted; emphasis in original.) *Vartuli* v. *Sotire,* supra, 363–64. The court also held that the time constraints mandate, not simply "further commission action," but "that, when the time has expired, approval of the application is automatic. The applicant whom the statute intends to protect is otherwise left with no more than a Pyrrhic victory." Id., 365.

If General Statutes § 8-7d (b) is mandatory because of the clause providing for the applicant's consent to an extension of the sixty-five day time period, then General Statutes § 8-7d (a) is equally mandatory. General Statutes § 8-7d (a) contains almost precisely the same consent provision as does General Statutes § 8-7d (b).

## II

We next address the question of whether General Statutes §§ 8-7d (a), (b) or 8-3 (g) governs this case.

The year after the enactment of the 1977 act, the legislature enacted Public Acts 1978, No. 78-104. In addition to the minor modifications, already noted, which it made in the permissible extensions of those time periods, the principal significance of this 1978 public act to the facts of this case lies in its amendments to General Statutes §§ 8-7d (b) and 8-3 (g).

As a result of the 1977 act, General Statutes § 8-7d (b) provided, in pertinent part, that a "decision on an application for approval of a site plan shall be rendered within sixty-five days after receipt of such site plan," plus extensions permitted by the applicant. Public Acts 1978, No. 78-104, § 1 (b), inserted the following language at the beginning of General Statutes § 8-7d (b): "Whenever the approval of a site plan is the *only*

*requirement to be met or remaining to be met* under the zoning regulations for a proposed building, use or structure. . . . " (Emphasis added.) Thus, the 1978 amendment limited the applicability of the time period for approval of a site plan under General Statutes § 8-7d (b) to those situations where that approval is either the only requirement or the only requirement remaining unmet for a proposed building or use under the zoning regulations. By its terms, therefore, General Statutes § 8-7d (b) does not apply unless the site plan is the only or the last remaining step in the zoning approval process.

General Statutes § 8-3 (g), which was enacted in 1977 as part of § 2 of Public Acts 1977, No. 77-549, covers the situation in which "[t]he zoning regulations . . . require that a site plan be filed with the commission or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations." Prior to its amendment in 1978, General Statutes § 8-3 (g) provided in pertinent part: "Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within sixty-five days after the date of receipt, as defined in § 8-7d. . . ." General Statutes (Rev. to 1978) § 8-3 (g). The 1978 amendment specifically keyed the presumption of approval into the time period established by the 1977 act, by amending General Statutes § 8-3 (g) to provide that such approval "shall be presumed unless a decision to deny or modify it is rendered within the period specified in § 8-7d, as amended by section 4 of public act 77-450. . . . " Public Acts 1978, No. 78-104, § 4.

Since 1978, therefore, the relationship between General Statutes §§ 8-3 (g) and 8-7d, and the general import of those sections, may be generally described as follows. General Statutes § 8-3 (g) refers to the situation where a municipality's zoning regulations require the

filing of a site plan as an aid to the determination of whether a proposed use of property complies with the regulations. Such a site plan is deemed to have been approved unless the zoning agency or official denies its approval, or modifies the plan, within the time period set by General Statutes § 8-7d.

General Statutes § 8-7d (b) refers to the situation where, unlike the situation covered by General Statutes § 8-3 (g), approval of a site plan is the only requirement, or the only remaining unmet requirement, under the zoning regulations for a proposed use of property. Such a site plan is deemed to have been approved unless the application for its approval is properly acted upon within sixty-five days after receipt of the application. See *Universal Realty, Inc.* v. *Planning Commission,* 3 Conn. App. 556, 562–63, 490 A.2d 96 (1985). The applicant "may consent to one or more extensions of such period, provided the total period of any such extension or extensions shall not exceed two further sixty-five day periods, or may withdraw such plan." General Statutes § 8-7d (b).

General Statutes § 8-7d (a) refers to all zoning matters which involve a formal petition, application, request or appeal in which a hearing is required. There are, however, two exceptions carved out of the broad provisions of this section. The first is explicit. The opening clause of General Statutes § 8-7d (a) is as follows: "Except as provided in subsection (b) of this section. . . ." Subsection (b), as we have noted, refers to the situation where approval of a site plan is the only requirement, or the only remaining unmet requirement, for approval for a proposed use of property. The second exception derives from General Statutes § 8-7d (d). That subsection provides: "(d) The provisions of subsection (a) of this section [8-7d] shall not apply to any action *initiated by any zoning or planning and zoning commission* regarding adoption or change of any zon-

ing regulation or boundary." (Emphasis added.) This exception recognizes that, where a zoning agency is considering adoption of or change in a zoning regulation or boundary, it is acting in its legislative capacity and should not, therefore, be restricted by the mandatory time limits of General Statutes § 8-7d (a). This exception is in turn limited, however, to the situation in which the proposal for legislative adoption or change is "initiated by . . . [the] zoning or plan or zoning and planning commission. . . . " Thus, by its terms, it does not apply to the situation where the proposal for zone adoption or change is submitted to the agency by an applicant.

We are aware that, in *Coastal Suburban Builders, Inc.* v. *Planning & Zoning Commission,* 2 Conn. App. 489, 479 A.2d 1239 (1984), this court appeared to rule, in broad language, that whenever a zoning agency is acting legislatively, as opposed to administratively, any time constraints are directory and not mandatory. Id., 492–93. We note, however, that the applicants for a zone change in that case pressed their arguments only pursuant to General Statutes §§ 8-3 (g) and 8-7d (b), and that the court did not consider the wide sweep of General Statutes § 8-7d (a) and the limited exception to it provided by § 8-7d (d). We are constrained, therefore, to limit *Coastal Suburban Builders, Inc.* v. *Planning & Zoning Commission,* supra, to its facts.

Having concluded that General Statutes § 8-7d (a) applies, with two exceptions, to all zoning applications, which would include an application for a zoning permit, and that its time constraints are mandatory, we next consider whether it applies to the plaintiff's application in this case. There is no question that his application was one that "must be submitted to a . . . planning and zoning commission . . . under . . . chapter [124]" of the General Statutes. The second trigger of General Statutes § 8-7d (a), however, is that "a

hearing is required on such . . . application. . . . "
There is nothing in the Bridgewater zoning regulations,
which we have examined, requiring a hearing on the
plaintiff's application for a zoning permit for the per-
mitted use which he sought. Although applications to
the commission for special uses within the zones of the
town require hearings, applications to the commission
for permitted uses, such as that of the plaintiff, do not.
We conclude, therefore, that the mandatory time con-
straints of General Statutes § 8-7d (a) do not control
the plaintiff's application.

## III

This leaves for consideration whether the provisions
of General Statutes § 8-3 (g) require, by the passage
of time, approval of the plaintiff's application. We con-
clude that, under the circumstances of this case, they
do.

General Statutes § 8-3 (g) provides in relevant part:
"The zoning regulations may require that a site plan
be filed with the commission . . . to aid in determining
the conformity of a proposed building, use or structure
with specific proposed regulations. A site plan may be
modified or denied only if it fails to comply with require-
ments already set forth in the regulations. Approval
of a site plan shall be presumed unless a decision to
deny or modify it is rendered within the period speci-
fied in section 8-7d."

We note that there is an inconsistency in the use of
the term, "site plan," between the first and third sen-
tences of this section. The first sentence connotes that
the site plan is but a part of the application approval
process, namely, as an aid in determining whether a
proposed use conforms to the regulations. The third
sentence contemplates automatic approval of a site plan
by the passage of time, as if approval of the site plan
carries with it approval of the entire application with

respect to which, under the first sentence, the site plan is simply an aid to determine the conformity of the proposed use with the regulations.

We need not resolve this inconsistency here, however, because in this case we view the plaintiff's site development plan as inseparable from, and part and parcel of, its accompanying documents. The regulation pursuant to which the site development plan was filed required that the plan "show all applicable data required." The application, the site plan itself and the accompanying two page document, taken together, purported to show all such data required by the regulations. Thus, for purposes of General Statutes § 8-3 (g), the plaintiff's site plan included his application and two page document.

Under these circumstances, it is clear that the commission's failure to act on the plaintiff's site plan, together with its accompanying material, rendered it approved pursuant to General Statutes § 8-3 (g). The commission neither denied nor modified the site plan "within the period specified in section 8-7d." Therefore, "[a]pproval of [the] site plan shall be presumed. . . ." Id. Since, as we have noted, the plaintiff's site plan included his application and other documents for purposes of § 8-3 (g), those documents are presumed to have been approved as well.

This conclusion also effectively disposes of the defendants' argument that the plaintiff is not entitled to mandamus because his application was not accompanied by the town sanitarian's written approval. If that were required for approval of the plaintiff's proposed hotel,[9] that would have been a ground for deny-

[9] The plaintiff claims that, because of the size of the septic system, the state department of environmental protection, and not the town sanitarian, has exclusive jurisdiction to issue a septic plan approval, and that he had applied for such approval. In view of our disposition of this case, we need not decide this issue.

ing the application within the applicable time limits. Similarly, any other failure of the plaintiff to comply with the requirements of the zoning regulations would have been grounds for a timely denial of the application.

There is no error.

In this opinion the other judges concurred.