[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
The plaintiff's complaint alleges negligence against Chase Manhattan Bank of Connecticut (Chase), Fleet Financial Group, Inc. (Fleet) and Thomas F. Hulbert Trust, in failing to maintain, inspect, warn patrons of and properly repair portions of the sidewalk near premises owned by Fleet and leased by Chase. Fleet's answer to the plaintiff's complaint includes special CT Page 12222 defenses and a crossclaim against Chase. The first count of Fleet's crossclaim alleges that pursuant to a lease agreement between it and Chase, Chase agreed to defend and indemnify Fleet from any liability for any injury to persons in or on the sidewalks abutting the leased premises. Therefore, Fleet alleges that it is entitled to indemnification from, and is entitled to be held harmless by, Chase for losses incurred as a result of the plaintiff's claims.[1]
Fleet filed a motion for summary judgment as to liability only on the first count of the crossclaim on the basis that there existed no genuine issue of material fact and it was entitled to judgment as a matter of law pursuant to the lease agreement. Chase filed an objection to the motion, asserting that there existed a genuine issue of material fact regarding exactly where the plaintiff claims she fell, that the lease language is ambiguous as to whether it includes indemnification for Fleet's own negligence and if the lease language does include such indemnity, the lease language violates General Statutes § 52-572k
and public policy. The court, Mintz, J., denied this motion for summary judgment without opinion. Fleet filed a motion to reargue, asserting that the court's decision to deny the motion for summary judgment, which was issued from the bench and rendered on the basis that there existed a genuine issue of material fact with regard to the location of the plaintiff's fall, should be reconsidered since the plaintiff indicated in a request to admit that she fell on the sidewalk abutting the portion of the building occupied by Chase. The court. Mintz, J., denied the motion.
Thereafter, Fleet filed a second motion for summary judgment as to liability on the first count of its crossclaim on the same basis as the previous motion for summary judgment. In support of the motion, Fleet attached various documents, including the plaintiff's answers to Fleet's request to admit, which indicate that the plaintiff fell on the sidewalk abutting the portion of the building occupied by Chase.
Fleet filed a third motion for summary judgment, prior to any ruling by the court on the second motion for summary judgment.[2] Fleet seeks summary judgment on the first count of the crossclaim on the basis that the lease agreement is clear and unambiguous that Chase must defend and indemnify Fleet. Thus Fleet argues that its motion should be granted since there exists no genuine issue of material fact and it is entitled to judgment CT Page 12223 as a matter of law. In support of the motion, Fleet submits its memorandum of law, an affidavit of a banking officer of Fleet (which includes a copy of the lease agreement) and the plaintiff's responses to its requests for admission. Chase filed an objection to this third motion for summary judgment, asserting as grounds for its objection that: (1) the lease language is ambiguous as to whether it includes indemnification for Fleet's own negligence and (2) if the lease language does provide for indemnity, such a provision violates General Statutes § 52-572k
and public policy. In support of its objection Chase attached a copy of a map of the property at issue, portions of deposition testimony of Gregory M. Donovan (an employee of Fleet) and Fleet's answers to the plaintiff's requests for admissions.
"Practice book § 384 [now Practice Book (1998 Rev.) § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) Thompson Peck, Inc. v. Division Drywall, Inc.,241 Conn. 370, 374, 696 A.2d 326 (1997). "[A]ny party may move for summary judgment upon any counterclaim or cross complaint as if it were an independent action." Practice Book § 379, now Practice Book (1998 Rev.) § 14-44. "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue . . . [S]ee Practice Book §§ 380 and 381 [now Practice Book (1998 Rev.) §§ 17-45 and 17-46]." (Internal quotation marks omitted.) Beers v. Bayliner MarineCorp. , 236 Conn. 769, 771 n. 4, 675 A.2d 829 (1996). "To oppose a motion for summary judgment successfully the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.) Connecticut National Bank v. Great Neck Development Co.,215 Conn. 143, 148, 574 A.2d 1298 (1990).
Chase does not challenge Fleet's motion for summary judgment on the basis that there exists a genuine issue of material fact regarding the location of the plaintiff's fall, as it did in previous objections filed with the court, presumably because the affidavits and other evidence submitted clearly indicate that the CT Page 12224 plaintiff fell on the section of the sidewalk which abuts the portion of the building leased by Chase. Chase does challenge the motion, however, on the grounds that the lease is unclear as to whether it includes indemnification for Fleet's own negligence and, if it does include such indemnification, it violates General Statutes § 52-572k and public policy. Thus, Chase asserts that Fleet is not entitled to judgment as a matter of law.
The lease agreement at issue provides in paragraph 15, the following: "Indemnity to Lessor. The lessee will defend and indemnify and save lessor harmless of and from all fines, suits, claims, demands and actions of any kind by reason of any breach, violation, or nonperformance of any condition hereof on the part of the lessee; the lessor shall not be liable for any injury or damage to person or property happening in or on the sidewalks abutting the premises, and the lessee agrees to defend and indemnify the lessor from any liability therefor; and the lessee shall defend and indemnify and save lessor harmless of and from all damages or liability for anything arising from or out of the use of said premises by the lessee."
"A lease is a contract . . . and its construction presents a question of law for the court." (Citations omitted.) Robinson v.Weitz, 171 Conn. 545, 551, 370 A.2d 1066 (1976). "[[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) Gateway Co. v.DiNoia, 232 Conn. 223, 229, 654 A.2d 342 (1995). "In determining the meaning and effect of the controverted language in the lease, the inquiry must focus on the intention expressed in the lease and not on what intention existed in the minds of the parties . . . Although ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder, where the language is clear and unambiguous it becomes a question of law for the court . . . When the plain meaning and intent of the language is clear, a clause in a written lease cannot be enlarged by construction. There is no room for construction where the terms of a writing are plain and unambiguous, and it is to be given effect according to its language." Id., 231-32.
"The intention of the parties is to be ascertained from the language used in the contract and that language must be given its common meaning and usage where it can be sensibly applied to the subject matter of the contract." Scribner v. O'Brien, Inc.,169 Conn. 389, 398-99, 363 A.2d 160 (1975). "[A] court will not CT Page 12225 torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) Vitti v. Allstate InsuranceCo., 245 Conn. 169, 177-78, (1998).
Chase argues that "[t]he general rule of law is that an intention to indemnify one against his own negligence must be expressed in clear and unequivocal language," citing the Appellate Session of the Superior Court's decision in Laudano v.General Motors Corp. , 34 Conn. Sup. 684, 687, 388 A.2d 842
(1977), and that the use of the word "any" in the portion of paragraph 15 relating to injuries occurring on the sidewalks abutting the premises — i.e., "the lessee agrees to defend and indemnify the lessor from any liability" — creates an ambiguity since "it is arguable that the word `any' . . . refers only to problems related to ice and snow hazards on the sidewalk, as the lease's one specific reference to sidewalks is in [paragraph] 8, which makes ice and snow a responsibility of the lessee."
In Laudano, the Appellate Session of the Superior Court considered the language of a lease providing: "Seller . . . agrees to indemnify and protect Buyer against all liabilities, claims or demands for injuries or damages to any person or property growing out of the performance of this contract by Seller . . ." (Internal quotation marks omitted.) Laudano v.General Motors Corp., supra, 34 Conn. Sup. 686. The court determined that the clear and unequivocal language of the provision included a promise to indemnify even the negligent indemnitee. Id., 688. In construing the word "all," the court noted that "[t]here cannot be any broader classification," and "[i]n its ordinary and natural meaning, the word `all' leaves no room for exceptions." (Internal quotation marks omitted.) Id.
In Burkle v. Car Truck Leasing Co., 1 Conn. App. 54,467 A.2d 1255 (1983), the Appellate Court construed a similar indemnification provision in a lease: "[L]essee agrees to indemnify and hold [l]essor harmless from any and all liability, loss, costs, damages and expenses . . . caused by or arising from ownership, use, operation . . . of one or more automobiles leased hereunder." (Emphasis omitted; internal quotation marks omitted.)Id., 56. The court, recognizing Laudano, determined that such language provided "an even stronger and more inclusive provision" than did the lease in Laudano, Id., 57. CT Page 12226
In Royal Ins. Co. of America v. Wilson Electrical Co., Superior Court, judicial district of Tolland at Rockville, Docket No. 050395 (August 15, 1994) (Klaczak, J.), the court granted summary judgment in favor of a lessor on a crossclaim for indemnification brought by the lessor against a lessee on the basis of the clear and unequivocal language in the lease providing for indemnification. The pertinent portion of the lease provided that "[t]he Lessee shall save the Lessor harmless fromany liability or expense on account of any accident or injury to Lessee, or to its property, or to any of its servants, employees, or agents, who or which may be injured or [damaged] in or about the demised premises from the occupancy, maintenance, or use of the demised premises or from the conduct of the Lessee's business at the demised premises." (Emphasis added.) Id. Notably, the court determined that "[s]imilar language contained in other lease agreements has been held to require total indemnification, even under circumstances where the loss was caused by the indemnitee's own negligence." Id., citing Laudano v. GeneralMotors Corp., supra; Burkle v. Car Truck Leasing Co., supra.
Fleet's claim that the language of the indemnity provision in the lease in the present case is clear and unambiguous that Chase must indemnify Fleet for any liability to the plaintiff is well taken. Although the provision does not include the word "all" in the pertinent portions, the language is clear that the word "any" is intended by the parties to mean "all" in the context of the natural and logical construction of the plain language of the lease provision. Indeed, the word "any" "[i]s often synonymous with `either,' `every,' or `all.' Its generality may be restricted by the context." Black's Law Dictionary (6th Ed. 1990), p. 94; see also Webster's New College Dictionary (9th Ed. 1987) (defining the word "any" as, inter alia, "EVERY — used to indicate one selected without restriction," "ALL — used to indicate a maximum or whole" or "unmeasured or unlimited in amount, number, or extent"). For purposes of statutory construction, "[the word `any' has a diversity of meanings and may be employed to indicate `all' or `every' as well as `some' or `one.'. . . Its meaning in a given statute depends upon the context and subject matter of the statute." Donohue v. ZoningBoard of Appeals, 155 Conn. 550, 556, 235 A.2d 643 (1967).
It is unclear how the word "any" could refer "only to problems related to ice and snow hazards on the sidewalk," as argued by Chase. Paragraph 15 makes no reference to paragraph 8, CT Page 12227 which, according to Chase, makes the clearing of ice and snow from the sidewalks the responsibility of the lessee. Such an unwarranted reading of the language of the lease would "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." (Internal quotation marks omitted.) Vitti v.Allstate Insurance Co., supra, 245 Conn. 177.
Chase argues that the word "any" should not be construed to mean the same as "all" because if the word were given such a construction, "Chase, as one tenant in this large building with other tenants whose spaces also have abutting sidewalks, will be required to indemnify the lessor for all injuries on all sidewalks, even those 50 yards away from their leased space." This tenuous reasoning does not, however, inject ambiguity into the language of paragraph 15, especially considering that the lease at issue specifically delineates the portion of the building leased by Chase as 2,939 square feet of "net rentable office space within the demised premises."
Giving the language of paragraph 15 its common meaning and usage when sensibly applied to the subject matter of the lease, paragraph 15 clearly and unequivocally states that Chase agrees to defend and indemnify Fleet from any liability for injury or damage to persons occurring upon the sidewalks abutting the premises. Since the context of the language in the lease does not restrict the meaning of the word "any," and upon consideration of the decisions in Laudano and its progeny, Chase's objection on the basis that the language is ambiguous as to whether the lease provides indemnification from Fleet's own negligence is without merit.
As an alternative objection to the motion for summary judgment, Chase argues that if the lease language includes indemnity for Fleet's own negligence, it violates General Statutes § 52-572k and public policy. Section 52-572k(a) provides: "Hold harmless clause against public policy in certainconstruction contracts. (a) Any covenant, promise, agreement or understanding entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building, structure or appurtenances thereto including moving, demolition and excavating connected therewith, that purports to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of such promisee, his agents or CT Page 12228 employees, is against public policy and void . . ."
In Burkle v. Car Truck Leasing Co., supra, the Appellate Court addressed the identical argument asserted by Chase in the present case. The court held that "[t]he legislature, in specifically outlawing hold harmless agreements in the construction industry, showed an intention that such a practice not be deemed against public policy in other situations, for had the legislature intended to outlaw all such provisions as against public policy, it could have said so." Burkle v. Car TruckLeasing Co., supra, 1 Conn. App. 57-58. Accordingly, the court affirmed the trial court's granting of a motion for summary judgment in favor of the lessor on its counterclaim against the lessee to be held harmless and indemnified under the lease. Id., 58.
General Statutes § 52-572k is applicable, as the title of the section indicates, only to construction contracts. See Dunnv. F J Construction Corp. , Superior Court, judicial district of New London at New London, Docket No. 512464 (January 9, 1991) (Axelrod, J.). Indeed, "the Connecticut cases which hold that an indemnity provision which purports to indemnify the indemnitee against his own negligence is void as against public policy are limited to those which have been made void by statute, § 52-572k, and to common carriers, neither of which applies here."Degeralomo v. Al And Sal Caterers, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 343316 (September 2, 1998) (Mottolese, J.) (22 CONN. L. RPTR. 548). Accordingly, § 52-572k has no application to the present case and Chase's objection to Fleet's motion for summary judgment based on a violation of § 52-572k and public policy is without merit.
Because there exists no genuine issue of material fact and it is evident that Fleet is entitled to judgment as a matter of law on the clear and unequivocal language of the indemnity provision of the lease, the court grants Fleet's motion for summary judgment.
D ANDREA, J.