[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This appeal arises from the decisions of the Zoning Board of the City of Stamford (Board), to grant the application of the defendants Jerry Effren and Grayrock Ridge LLC (Greyrock) to alter the zoning designation CT Page 15764 of certain property from R-10, one family residential to R-D. designed residential district, and to approve Greyrock's site and architectural plans for fourteen residential units on the land in question.
 Jurisdiction
The pleading and proof of aggrievement are essential to the jurisdiction of the Superior Court over an appeal from a zoning board action. Connecticut General Statutes § 8-8(b); Jolly, Inc. v. ZoningBoard of Appeals, 237 Conn. 184 (1996). Connecticut General Statutes § 8-8(a)(1) defines an aggrieved person as one who owns land that abuts, or is within one hundred feet of, the land which is the subject of the decision appealed from. All the plaintiffs alleged in their complaint that they owned and resided on land adjacent to or within one hundred feet of the property. The plaintiffs Hossein Ahmadi and John Halpin testified and presented documentary evidence to that effect which was unchallenged. The court finds that Ahmadi and Halpin are aggrieved persons.[1] The record reflects that the Board's decisions were made on July 31, 2000 (Return of Record [ROR] Items 39 and 40) and notice of the decisions was published on August 4, 2000 (ROR Items 35 and 36.) The appeal was timely served on August 17, 2000. This court has jurisdiction of the appeal.
 Facts
The appeal involves a tract of land, slightly over eight acres in size, known as 154 Pepper Ridge Road (the Property). The Property is bounded on the east by Pepper Ridge Road and by the Stamford Rippowam Campus on the west. The Property also lies between Silver Hill Lane on the north and High Clear Drive to the south. (ROR, Items 3, 15, 18.)
Greyrock purchased the Property in 1998 from the Connecticut Humane Society. (ROR, Item 3.) The Property was located in an R-10 zone (single family residences, minimum lot size of 10,000 square feet). In late 1998, Greyrock filed two applications: one application was to the Stamford Planning Board seeking approval of a subdivision plan within the R-10 zone comprising of sixteen lots; the other application was to the Stamford Zoning Board seeking a change in zoning for the Property from R-10 to R-D designed residence district and an application for site plan approval. (ROR, Item 7.) The conventional subdivision proposal ran into certain opposition, and Greyrock decided to go forward with R-D designed residential district proposal. (ROR, Item 17.) The proposal for a zone change for the Property to R-D designed residential district was approved as was the proposed site plan for cluster housing in the R-D area. (ROR, Items 39 and 40.) CT Page 15765
 Issues Presented
In this well briefed and argued appeal, the issues have been clearly delineated and presented to the court. The first issue involves whether the Property is eligible for designation as a R-D Designed Residential District (DRD). The second issue raises the question of how the Board should determine the appropriate density of developments within a DRD. Finally, the plaintiffs contend that the Board approval of Greyrock's site plan was in contravention of the uniformity requirements contained in Connecticut General Statutes § 8-2.
 Scope of Review
As a general matter, actions of a planning board are reviewable in court to determine whether they are unreasonable, arbitrary or illegal.Schwartz v. Planning Zoning Commission, 208 Conn. 146 (1988). A reviewing court should not substitute its judgment for that of the administrative agency if the latter has exercised its judgment honestly, reasonably and fairly. Whittaker v. Zoning Board of Appeals, 179 Conn. 650
(1980). However, questions involving the interpretation of zoning regulations are questions of law, and a reviewing court is not bound by the interpretation of the agency. Schwartz v. Planning ZoningCommission, supra. The same rules of construction and interpretation which apply to statutes also apply to local zoning regulations. Aaron v.Conservation Commission, 183 Conn. 532 (1981).
 Discussion
A. Eligibility of the Property for DRD Designation
The Stamford Zoning Regulations authorize the Board to designate a specific area within a zone for single family residences to be designated as "R-D Designed Residential District." Stamford Zoning Regulations 9.A.1. The minimum acreage for any DRD is not less than eight acres in an existing R-10 zone. Id., Section 9.A.2. The regulation continues
 "Said minimum acreages shall have been held as a single contiguous parcel of land, whether by one or successive owners, for at least three years prior to an application for a zone change to an R-D District"
The plaintiffs contend that the Greyrock acreage which the Board designated as a DRD was not a "single contiguous parcel" because it was, in fact, two parcels. They point to evidence in the Record indicating that the Property was comprised of two parcels. Specifically, written submissions to the Board on behalf of Greyrock refer to the Property as CT Page 15766 comprising two "parcels' or "tracts." (ROR, Item 3. p. L Item 10, p. 3. Item 25; see also ROR, Item 18 depicting two parcels.)
The defendants, on the other hand, point out that the entire Property has been owned by Greyrock or the Connecticut Humane Society for over the requisite three year period (indeed the Property has had only one owner at a time for over fifty years). The parties appeared to agree at oral argument that the adjectives "single" and "contiguous" do not harmonize well with each other when employed together to modify "parcel." The plaintiffs submit that the court should focus on the word single as being dispositive while the defendants contend that the word contiguous holds the key to proper interpretation of the regulation. "Single" is defined as: not accompanied by another, consisting of one alone (The AmericanHeritage Dictionary, 2d ed.) and one only (Black's Law Dictionary, 5th ed.). "Contiguous" means: sharing an edge or boundary (AmericanHeritage), in close proximity, neighboring, touching at a point or along a boundary (Black's). Thus, single connotes something alone while contiguous connotes something in conjunction with something else, e.g. contiguous to or contiguous with an object.
Furthermore, the precise meaning of the work "parcel" in Section 9.A.2. is unclear. The court does not agree with plaintiffs that because the Property was apparently once two separate plots or parcels of land, it still must be considered such in face of the fact that the entire Property has been commonly owned for over half a century. Once two parcels of adjoining land have one owner, the boundary between them may be nothing more than evidence of an historical, but not present, fact. Certainly, the common owner may treat the land as one entity.
In light of the above, the court concludes that the phrase "single contiguous parcel" in the regulation is ambiguous in meaning. When a court interprets a zoning regulation it looks for the expressed intent of the zoning board as set forth in the language of the regulation. When that language is clear or unambiguous on its face, one looks no further.Planning Zoning Commission v. Gilbert, 208 Conn. 698 (1988); New Londonv. Zoning Board of Appeals, 29 Conn. App. 402 (1982). When, as here, that is not the case, the court must examine other indicia of intent or purpose, such as legislative history. Double I Limited Partnership v.Planning and Zoning Commission, 218 Conn. 65 (1991). Additionally, our Supreme Court has provided the following guidance:
 Whenever possible, the language of zoning regulations will be construed so that no clause is deemed superfluous, void or insignificant. Essex Leasing, Inc. v. Zoning Board of Appeals, 206 Conn. 595, 601, 539 A.2d 101 (1988); Melody v. Zoning Board ofCT Page 15767 Appeals, 158 Conn. 516, 521, 264 A.2d 572 (1969). The regulations must be interpreted so as to reconcile their provisions and make them operative so far as possible. Donohue v. Zoning Board of Appeals, 155 Conn. 550, 557, 235 A.2d 643 (1967). When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results. Maciejewski v. West Hartford, 194 Conn. 139, 151-52, 480 A.2d 519. Verrastro v. Sivertsen, 188 Conn. 213, 220-01, 448 A.2d 1344 (1982); Muller v. Town Plan Zoning Commission, 145 Conn. 325, 331, 142 A.2d 524 (1958).
Planning Zoning Commission v. Gilbert, supra 705-6 (1988).
One potential source from which to ascertain the intent or purpose of the regulation is a memorandum from an unidentified "zoning analyst" to the Board dated January 13, 1983 which proposed the actual language adopted and now found at Section 9.A.2. This memorandum which is attached to Greyrock's memorandum as Exhibit A has been stipulated to be part of the Record.[2] The memorandum is confusing in part; however, it contains some helpful information. For instance, it points out that earlier versions of the regulation required that the acreage for a DRD be "under single ownership" and the memorandum notes that that phrase "appear[s] to articulate the intent of the Board" and that the phraseology suggested in the memorandum (and eventually adopted) is to convey "[t]he same purpose and intent."
Having reviewed the above, and mindful of the rules of construction, the court interprets the phrase at issue to mean that the area sought to be designated as a DRD be under single ownership, and if assembled from various parcels and plots this must have been accomplished more than three years past and these plots must be contiguous with each other. The Greyrock site meets these criteria. Therefore, the court concludes that the Board was not arbitrary, unreasonable or acting illegally by finding that the Property was eligible for DRD designation.
B. Density
The plaintiffs contend that the Board erred as a matter of law in approving Greyrock's site plan because the density of the site plan exceeded what was permissible under Zoning Regulation 9.A.2.C. That section reads in full as follows:
 The maximum number of dwelling units permissible in CT Page 15768 the R-D Designed Residential District shall not exceed ninety percent (90%) of the number obtained by dividing the gross acreage by the minimum lot size permitted in the pre-existing zone and may be less where a determination is made by the Zoning Board that physical and topographical features of the land would preclude attainment of such density under prior existing zoning.
Plaintiffs submit that this provision requires the Zoning Board to make a determination whether the physical and topographical features would preclude the density as computed by the arithmetical calculation in the first clause of the regulation. They contend that the Board is required to analyze the maximum number of lots that would be allowed if the property was conventionally subdivided and then take 90% of that number to arrive at the maximum number of residential units. Their argument continues by pointing out that the sixteen lot subdivision at one time proposed for the Property was "in trouble" and withdrawn from consideration. (See ROR, Item 2d.) That fact, plus a review of the topography of the Property, plaintiff's claim, shows that no more than fifteen lots would be allowed on the Property under the existing R-10 zone regulations, and therefore the approval of the fourteen residence cluster by the Board was in contravention of the regulation's maximum of 90% of fifteen.
The defendants contend that the language of the regulation, specifically that the maximum number of dwelling units "may be less where a determination" by the Board is made, does not require the Board to calculate what the allowable maximum density might have been under prior zoning.
Both arguments are forcefully and cogently made. After thorough consideration, the court concludes that the Board acted in conformance with the regulation. The language of the regulation, particularly the word "may", does not clearly mandate the Board to determine the specific calculation sought by the plaintiffs, i.e. the precise number of subdivision lots allowable on the Property under the existing R-10 zone. Whether any calculation or determination is required, is not before the court because the Board in this case did not allow the maximum density, assuming no topographical or physical problems, of 31 units.[3]
Therefore, it must be assumed that the Board felt that topographical and physical reasons precluded this many residential units
As the court understands the plaintiffs' argument, they contend that the Board must look at the area to be designated as a DRD and calculate how many lots would be approved if a conventional subdivision application CT Page 15769 for the area was being considered. The plaintiffs then contend that the Board, having the above calculation in hand, may only approve a R-D site plan that contains a number of residential units which equal 90% or less of the lots which would have been approved in a conventional subdivision of the same area.
There are essentially three reasons why the court cannot accept plaintiffs' arguments. First, as noted, there is no specific language in the regulation requiring that Board to make the calculation they seek. What is lacking are any words that can be construed as directing the Board to undertake a specific course of action. Second, the provision contains nothing to support plaintiff's contention that "less" means only 90% of a lower and specifically calculated density. It is equally possible that "less" means a lower percentage than ninety should be applied to the maximum number of lots allowed, assuming no topographical or other physical problems. Such an interpretation would allow the Board flexibility in setting density standards for various types of DRDs. In this case, the Board approved fourteen residential units, or a little over 40% of the maximum number of 10,000 square foot lots allowable in the eight acre tract.
Third, the interpretation pursued by the plaintiffs would require all DRD applications to contain a conventional subdivision application and site plan as well, simply for the purpose of allowing the Board to make the calculation that plaintiffs deem necessary. While in this case a separate subdivision plan was submitted, this would appear to be an uncommon procedure. To mandate such extra expenditures by applicants and extra effort by the Board to make the necessary calculation, would be an unwise judicial interpretation, absent specific and clear regulatory language.
C. Uniformity
Connecticut General Statutes § 8-2 authorizes local zoning authorities to regulate a number of matters, including "the size of yards". However, "all such regulations shall be uniform" for each kind of building throughout each zoning district. Plaintiff's point out that the Greyrock site plan approved by the Board has non-uniform set backs. (See ROR, Item 16.) Stamford Zoning Regulations pertaining to DRD's do not establish any set back or yard requirements. They conclude that the Board's decision approving the site plan with non-uniform set backs was in violation of Section 8-2.
The court disagrees with this position. The first sentence of Section 8-2
authorizes local authorities to enact set back regulations; but such regulations are not mandated. Wisely or not, Stamford has not established CT Page 15770 set back regulations in a DRD. Without such a regulation, the Board is authorized to approve site plans with irregular set backs.
For the reasons set forth above, the appeal is denied.
ADAMS, J.