CENTER SHOPS OF EAST GRANBY, INC., ET AL. *v.*
PLANNING AND ZONING COMMISSION OF THE
TOWN OF EAST GRANBY ET AL.
(AC 17875)

Landau, Schaller and Dupont, Js.

Argued December 8, 1998—officially released April 20, 1999

*Donald R. Holtman,* for the appellants (defendants).

*John W. Bradley, Jr.,* for the appellees (plaintiffs).

*Opinion*

DUPONT, J. The defendants[1] appeal from the judgment of the trial court granting the plaintiffs' application for a writ of mandamus, compelling the defendant planning and zoning commission (commission) to approve a site plan application for one parcel of land and to approve an application for a special permit and site plan for an adjoining parcel of land. We affirm the judgment of the trial court.

The facts that follow are contained in a written stipulation of the parties. The plaintiffs are the owners of two abutting parcels of land in the town of East Granby. The plaintiff Center Shops of East Granby, Inc. (Center Shops), owns one parcel on which it sought to construct a convenience store, and the individual plaintiffs, Harold L. Pierce, Michael B. Guarco and Philip D. Main, are coowners of an adjoining parcel on which they sought to construct a gasoline service station. Both parcels are located in a business zone subject to the zoning regulations of the town of East Granby.[2] The plaintiffs B and D Petroleum Sales, Inc., and Decker

---

[1] The defendants in this case are the planning and zoning commission of the town of East Granby, the town of East Granby and Frederick O'Brien, the chairperson of the planning and zoning commission.

[2] Pursuant to the East Granby zoning regulations, gasoline service stations are permitted in a business zone, subject to the granting of a special permit and approval of a site plan by the commission, and retail stores are permitted in a business zone, subject only to the approval of a site plan by the commission.

and Company (Decker) are agents for the plaintiff property owners.

In October, 1995, the plaintiff property owners retained the services of Decker, a Massachusetts corporation, to act as their agent in connection with their applications for site plan approval and a special permit to construct a gasoline service station and site plan approval for a convenience store on their properties. On September 23, 1996, Decker filed with the commission an application for a special permit accompanied by a site plan as to the parcel owned by Pierce, Guarco and Main, designated application 96-17, and also filed an application for the approval of a site plan relating to the parcel owned by Center Shops, designated application 96-16. On October 30, 1996, Decker agreed to a sixty-five day extension for the commission to take action on the site plan application of Center Shops for the convenience store "to coincide with the time line for the special permit application" for the gasoline service station.

The commission scheduled a public hearing on the application for a special permit and approval of a site plan for the gasoline service station on November 26, 1996.[3] At that hearing, Decker withdrew the applications of the corporate and individual plaintiffs because they needed to obtain an inland wetlands permit. The commission agreed to treat the withdrawn applications as immediately resubmitted and received without payment of additional fees.[4] The commission treated the applications as new and they were renumbered from 96-17 and

---

[3] There are two site plans involved in this case. One site plan accompanied the special permit application of the individual plaintiffs for a gasoline service station and the other is that of Center Shops for a convenience store. Action on the site plan approval for the convenience store did not require a public hearing, whereas action on the special permit and approval of the site plan for a gasoline service station did require a public hearing.

[4] According to the commission, it could have accepted the applications at its next regularly scheduled meeting on December 3, 1996, but, instead,

96-16, to 96-22 and 96-21, respectively. On January 10, 1997, the town's inland wetlands agency granted a permit to the plaintiffs with conditions.

Following a request from the commission, dated January 8, 1997, Decker agreed in writing to a one week extension in the start of the public hearing on the application for a special permit and approval of the site plan for the gasoline service station. The public hearing was then scheduled for February 4, 1997.[5] On January 28, 1997, the commission published a notice of the public hearing to be held on application 96-22. The notice, however, was not timely published as required by General Statutes § 8-3c (b).[6] At the hearing on February 4, 1997, the commission continued the public hearing on the special permit until February 25, 1997, to allow for republication of the notice.

On February 13 and 20, 1997, the commission published notice of the public hearing scheduled for February 25, 1997. This notice did not state the time of the hearing as required by General Statutes § 8-3c (b).[7] At the February 25, 1997 hearing, the plaintiffs did not participate and refused to agree to any further extensions. At its regularly scheduled meeting on April 1, 1997, the commission met and denied application 96-22, the plaintiffs' application for a special permit and

---

it accommodated the plaintiffs by accepting the applications as filed on November 26, 1997.

[5] Because the applications were received on November 26, 1996, the sixty-five day period set forth in General Statutes § 8-7d, together with the seven day extension agreed to by the plaintiffs as to the public hearing on the special permit application, expired on February 6, 1997.

[6] The notice also did not state the time of the hearing as required by General Statutes § 8-3c (b), but this defect was not included in the stipulation of the parties.

[7] General Statutes § 8-3c (b) provides in relevant part: "Notice of the time and place of such hearing [for a special permit] shall be published . . . at least twice, at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before the date of such hearing. . . ."

approval of a site plan for a gasoline service station. It also denied application 96-21, the application for approval of a site plan for a convenience store.

On May 8, 1997, the plaintiffs brought this mandamus action against the defendants, claiming that the commission violated §§ 8-3c[8] and 8-7d.[9] The plaintiffs alleged that notices of the meetings on the special permit, and its accompanying site plan for a gasoline service station, were legally defective because they did not state the time of the hearing, and one notice was published only eight days before the scheduled hearing of which it

[8] General Statutes § 8-3c provides in relevant part: "(b) The zoning commission or combined planning and zoning commission of any municipality shall hold a public hearing on an application or request for a special permit or special exception, as provided in section 8-2 . . . . The commission shall not render a decision on the application until the inland wetlands agency has submitted a report with its final decision to such commission. . . . Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice . . . . Such commission shall decide upon such application or request within the period of time permitted under section 8-7d. Whenever a commission grants or denies a special permit or special exception, it shall state upon its records the reason for its decision. . . ."

[9] General Statutes § 8-7d provides in relevant part: "(a) Except as provided in subsection (b) of this section, in all matters wherein a formal petition, application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter and a hearing is required on such petition, application, request or appeal, such hearing shall commence within sixty-five days after receipt of such petition, application, request or appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearing. The petitioner or applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of any such period shall not be for longer than the original period as specified in this subsection, or may withdraw such petition, application, request or appeal.

"(b) Whenever the approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations for any building, use or structure, a decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan. The applicant may consent to one or more extensions of such period, provided the total period of any such extension or extensions shall not exceed two further sixty-five-day periods, or may withdraw such plan. . . ."

purported to give notice. Center Shops also alleged that the commission failed to render a decision on the site plan for a convenience store within sixty-five days of receiving the plan. The plaintiffs claimed that the purported hearings held on February 4 and 25, 1997, were nullities and that the statutory violations resulted in automatic approval of both the application for a special permit and site plan approval for a gasoline service station and the application for site plan approval for a convenience store. The trial court agreed with the plaintiffs and granted the relief requested.

The trial court specifically stated that it found no evidence of unclean hands on the part of the plaintiffs. It incorporated the entire written stipulation of the parties in its memorandum of decision. The trial court found that the notices of January 28 and February 13 and 20, 1997, were defective and void. The court held that "because no hearing was held in regard to the special permit within sixty-five days of the receipt of the application, the application was automatically granted." The trial court also held that "[n]o decision was made here to deny or modify the application [for site plan approval] within sixty-five days after the receipt of the site plan. Thus, approval of the site plan application is presumed. [General Statutes] § 8-3 (g)." The court's judgment of mandamus ordered the commission to approve both the site plan for the convenience store and the special permit application for the gasoline service station.

The commission claims that the trial court improperly granted mandamus as to the special permit of the individual plaintiffs and the site plan of Center Shops. The commission claims that (1) it was not bound by statutory time constraints with regard to the site plan of Center Shops because Center Shops had tied action on the approval of its site plan to the application of the

individual plaintiffs for a special permit and (2) automatic approval is not a statutory form of relief to an applicant for a special permit when a commission has published a defective notice of the required public hearing. These claims, according to the commission, do not involve any dispute that "proper notice of public hearings is a jurisdictional prerequisite to action by a planning and zoning commission, and that the failure of such notice renders void any action the commission takes." The commission does not claim that the notices met the statutory requirements as to publication and content of notices for hearings on applications for special permits.

I

## SITE PLAN OF CENTER SHOPS

The commission concedes that except for the alleged connection between the site plan of Center Shops and the special permit of the individual plaintiffs, Center Shops would be entitled to automatic approval of its site plan application. The commission agrees that the doctrine of automatic approval applies to site plan approvals because § 8-3 (g) specifically provides that "[a]pproval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d." The commission argues that Center Shops is not entitled to the statutory grant of automatic approval because it intentionally relinquished, by its own action, its right to the benefit of the statute.

Center Shops, by letter dated October 30, 1996, granted the commission a sixty-five day extension for action on its site plan "to coincide with the time line for the special permit application." The letter refers to action on site plan application 96-16, which had been filed on September 23 and received on September 24, 1996. The letter predates the subsequent resubmission

of the same site plan as application 96-21 at the scheduled hearing of November 26, 1996, and thus could refer, as of the date of its writing, only to a time period that began on September 24, 1996.

Section 8-7d (b) provides that whenever the approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations, as it is under the East Granby zoning regulations for a retail store, a decision on the application for approval of such a site plan shall be rendered within sixty-five days after receipt of such site plan, and "[t]he applicant may consent to one or more extensions of such period, provided the total period of any such extension or extensions shall not exceed two further sixty-five-day periods . . . ."

The original sixty-five days for a decision would have required that the commission make a decision by November 26, 1996; the extension provided an additional sixty-five days beyond November 26, 1996. The site plan application was denied on April 1, 1997, well past sixty-five days from November 26, 1996. The commission claims that the letter of October 30, 1996, agreed to an extension that allowed the commission to take no action on Center Shops' site plan application until action on the special permit was taken.[10]

The time line for the special permit application referred to in Center Shops' letter could refer only to the time line as it existed as of the letter's date, namely, October 30, 1996. We must, therefore, look to the time limits for a special permit as of that date, which are found in §§ 8-3c (b) and 8-7d. We do so to determine

---

[10] The defendants cannot argue that action on the site plan of Center Shops could be totally open-ended as to extensions because § 8-7d (b) provides that the total period of extensions for a site plan application cannot exceed two sixty-five day periods beyond the initial sixty-five days for a decision.

the amount of time Center Shops intended by its letter to grant to the commission.

Section 8-3c (b) provides in relevant part that a zoning commission "shall decide upon such application or request [for a special permit] within the period of time permitted under section 8-7d." Section 8-7d (a) requires a hearing within sixty-five days after receipt of an application, except for those applications in which a site plan is the only requirement, and requires a decision within sixty-five days after the completion of such hearing, which must be completed within thirty days of the commencement of the hearing. It also provides that an "applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of any such period shall not be for longer than the original period as specified in this subsection . . . ." For purposes of § 8-7d (a), § 8-7d (c) provides that the day of receipt of an application is the day of the next regularly scheduled meeting immediately following the day of submission.

On the basis of the pleadings in this case, the date of receipt of the special permit application was September 24, 1996. The plaintiffs alleged in their complaint and the commission admitted that both the application for a site plan and for the special permit were received by the commission on September 24, 1996. The total period of time given to the commission to take action on a special permit, pursuant to §§ 8-7d and 8-3c (b), is 160 days from the date of the receipt of the application for a special permit. That period had expired by April 1, 1997. Any extension of time given by Center Shops would also have expired by the terms of its letter to the commission.

We conclude that the letter of October 30, 1996, did not extend the time for a decision on Center Shops' site plan application to April 1, 1997, and that Center

Shops was therefore entitled to a judgment of mandamus.

Even if the letter could be interpreted as extending the time for the decision on the application for site plan approval to April 1, 1997, the date the commission acted on the special permit, there would be automatic approval of the site plan because the hearing on April 1, 1997, as to the special permit was void and a nullity because of defective notices.[11] As such, no valid action was ever taken as to the special permit. Approval of the site plan as to the convenience store became automatic when the time for valid action on the special permit expired.

Furthermore, Center Shops did not expressly agree to an extension of time for a particular period to a particular date, thereby waiving such rights as it otherwise had pursuant to § 8-3 (g). See *October Twenty-Four, Inc.* v. *Planning & Zoning Commission*, 35 Conn. App. 599, 606–607, 646 A.2d 926 (1994). Although an applicant may waive its right to require a commission to make a decision within a statutory period of time; *Frito-Lay, Inc.* v. *Planning & Zoning Commission*, 206 Conn. 554, 563–64, 538 A.2d 1039 (1988); carte blanche waiver tied to no particular date has not been countenanced by any case of which we are aware.

In *University Realty, Inc.* v. *Planning Commission*, 3 Conn. App. 556, 564, 490 A.2d 96 (1985), the defendant argued that the plaintiff's request to the defendant commission to table its site plan application constituted consent to an extension of time under § 8-7d (b). That court stated that the consent provision of § 8-7d (b) was " 'for the protection of the [applicant]' " and that the provision must be construed in the applicant's favor. Id., 565. After reviewing the cases, the stipulation of

---

[11] See part II of this opinion.

the parties and the trial court's memorandum of decision, we conclude that the judgment of mandamus in favor of Center Shops should be affirmed.

## II

## SPECIAL PERMIT OF INDIVIDUAL PLAINTIFFS

The next issue this court must decide is whether the individual plaintiffs are entitled to automatic approval of their special permit application as a result of the commission's failure to comply with the statutory notice and hearing requirements of §§ 8-3c (b) and 8-7d (a).

Section 8-3c (b) provides in relevant part that a zoning commission shall hold a public hearing on an application for a special permit and that "[n]otice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice, at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before the date of such hearing. . . . Such commission shall decide upon such application or request within the period of time permitted under section 8-7d. . . ." Section 8-7d (a) provides in relevant part that "in all matters wherein a formal petition, application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter *and a hearing is required* on such petition, application, request or appeal, such hearing shall commence within sixty-five days after receipt of such petition, application, request or appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearing. . . ." (Emphasis added.)

"Zoning commissions are required to provide adequate published notice of a public hearing to be held

on an application or request for a special permit or special exception. . . . [T]his court has held that the purpose behind the notice requirement of § 8-3 is fairly and sufficiently to apprise those who may be affected by the proposed action of the nature and character of the proposed action so as to enable them to prepare intelligently for the hearing." (Citation omitted; internal quotation marks omitted.) *Nazarko* v. *Zoning Commission*, 50 Conn. App. 517, 519, 717 A.2d 853, cert. denied, 247 Conn. 941, 723 A.2d 318 (1998).

"Whether failure to give notice affects subject matter jurisdiction depends on who is to be notified. . . . When the notice required . . . is constructive notice to the general public by means of legal advertisement, failure to issue such notice properly is a defect implicating subject matter jurisdiction." (Citations omitted.) *Koskoff* v. *Planning & Zoning Commission*, 27 Conn. App. 443, 446, 607 A.2d 1146, cert. granted, 222 Conn. 912, 608 A.2d 695 (1992) (appeal withdrawn November 10, 1992). The failure to give statutory notice to the general public is a subject matter jurisdictional defect and it cannot be waived nor can jurisdiction be conferred by consent of the applicant. *Lauer* v. *Zoning Commission*, 220 Conn. 455, 461–62, 600 A.2d 310 (1991). "Strict compliance with statutory mandates regarding notice to the public is necessary"; *Koskoff* v. *Planning & Zoning Commission*, supra, 447; and "[f]ailure to give proper notice constitutes a jurisdictional defect." *Slagle* v. *Zoning Board of Appeals*, 144 Conn. 690, 693, 137 A.2d 542 (1957); see also *Wright* v. *Zoning Board of Appeals*, 174 Conn. 488, 491, 391 A.2d 146 (1978). "A defect in the content of the notice cannot be cured by proof that some members of the public received actual notice, or appeared at the hearing." (Internal quotation marks omitted.) *Nazarko* v. *Zoning Commission*, supra, 50 Conn. App. 519–20.

"Without proper public notice, zoning authority actions are null and void." *Cocivi* v. *Plan & Zoning Commission*, 20 Conn. App. 705, 707, 570 A.2d 226, cert. denied, 214 Conn. 808, 573 A.2d 319 (1990). "[O]ur Supreme Court has recognized that when action by a municipal entity is subsequently found to be invalid, it is as if that entity never met or voted. In *Brooklyn Trust Co.* v. *Hebron*, 51 Conn. 22 (1883), our Supreme Court held that no town meeting occurred nor was any vote taken because notice issued prior to the meeting failed to comply with the mandate of the applicable statute. Id., 29. The court held that because notice was insufficient, '[t]here was therefore no lawful meeting . . . and of course no vote. . . . [T]here is absolutely nothing to consider.' Id. In other words, the meeting was void ab initio—'[f]rom the beginning' or 'from the first act.' Black's Law Dictionary (5th Ed.)." *Koskoff* v. *Planning & Zoning Commission*, supra, 27 Conn. App. 449.

The commission does not dispute that proper notice is a jurisdictional prerequisite to a hearing on a special permit but claims, instead, that automatic approval of the permit does not flow from a defective notice of the required public hearing.

Here, it is undisputed that the notice issued by the commission as to the public hearing scheduled for February 4, 1997, was invalid in that it failed to state the time of the hearing and it was not timely published. Although the commission met on February 4, 1997, and continued the hearing until February 25, 1997, in order to republish the notice, that action of the commission was void. Pursuant to § 8-7d (a), the commission was required to hold a public hearing on the special permit application by February 6, 1997, but failed to do so. Because the failure to give proper notice constituted a jurisdictional defect, the actions of the commission in the meeting on February 25, 1997, and in subsequently denying the application on April 1, 1997, were void.

The plaintiffs claim that because the commission's actions were void and because the commission failed to comply with the statutory time limits of § 8-7d (a), they are entitled to automatic approval of their special permit application. The commission claims that the automatic approval doctrine does not apply to special permit applications because there is no statutory provision for the doctrine.

Section 8-3 (g) provides in relevant part that "[t]he zoning regulations may require that a site plan be filed with the commission or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations. . . . Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. . . ." Likewise, General Statutes § 8-26, governing the approval of subdivision plans, provides in relevant part that the failure of the commission to act within the time limits in the statute "shall be considered as an approval." Section 8-3c (b), which governs special permits, merely states that "[s]uch commission shall decide upon such application or request within the period of time permitted under section 8-7d. . . ."

The appellate courts of this state have held that the failure of a planning and zoning commission timely to deny, modify or approve either a site plan or subdivision approval application results in automatic approval of said application. See *Viking Construction Co.* v. *Planning Commission*, 181 Conn. 243, 246, 435 A.2d 29 (1980); *October Twenty-Four, Inc.* v. *Planning & Zoning Commission*, supra, 35 Conn. App. 606; *Koskoff* v. *Planning & Zoning Commission*, supra, 27 Conn. App. 450.

The commission relies on the case of *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225

Conn. 432, 623 A.2d 1007 (1993), for its conclusion that the doctrine of automatic approval does not apply to applications for special permits made to planning and zoning commissions.[12] In that case, the plaintiffs sought a writ of mandamus to compel the defendant, zoning board of appeals to grant their application for site plan approval for a proposed asphalt plant, claiming that the defendant's failure to conduct a public hearing within the time specified by statute, § 8-7d (a), resulted in the automatic approval of the application. The trial court rendered judgment granting the writ and this court affirmed that judgment. The Supreme Court granted certification from this court. The relevant certified question was as follows: "Does the 'automatic approval' doctrine, applicable to a zoning commission that fails to issue timely decisions on site plan or subdivision applications under General Statutes §§ 8-3 (g) and 8-26, also apply to a zoning board of appeals that fails to hold a hearing on an appeal under General Statutes § 8-7d (a)?" (Internal quotation marks omitted.) Id., 434 n.2. The court concluded that it did not.

Our Supreme Court concluded that unlike §§ 8-3 (g) and 8-26, § 8-7d (a) contains no provision expressly mandating automatic approval of a special permit application that is the subject of an appeal to a zoning board

[12] The defendants correctly note that *Leo Fedus & Sons Construction Co.* restricted the case of *Vartuli* v. *Sotire*, 192 Conn. 353, 363–64, 472 A.2d 336 (1984), to its facts, namely, a site plan application to a zoning board. *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, supra, 225 Conn. 446 n.7. We are concerned in our discussion in part II, however, with a *special permit application* accompanied by a site plan. The defendants claim that *Carr* v. *Woolwich*, 7 Conn. App. 684, 510 A.2d 1358, cert. denied, 201 Conn. 804, 513 A.2d 698 (1986), is overruled. We disagree. The *Leo Fedus & Sons Construction Co.* court stated that *Carr* is overruled to the "*extent* that [it is] inconsistent with [the *Leo Fedus & Sons Construction Co.*] opinion *only* . . . ." (Emphasis added.) *Leo Fedus & Sons Construction Co* v. *Zoning Board of Appeals*, supra, 446 n.7. We read the *Leo Fedus & Sons Construction Co.* footnote as meaning that *Carr* cannot be applied to special permits pending before zoning boards of appeal but leaves open the question of the present case.

of appeals. "Because §§ 8-3 (g) and 8-26 expressly provide for the automatic approval of applications when a zoning commission or planning commission do not act within prescribed time periods, it can be inferred that had the legislature intended that the failure of a zoning board of appeals to hold a hearing within sixty-five days results in automatic approval, the legislature would have so provided." Id., 442. The court, in explicating the rationale for its holding, noted that "[z]oning boards of appeals do not perform the same functions as zoning commissions. Zoning boards of appeals do not adjudicate initial land use applications, but review those already acted upon by a municipality's zoning commission or enforcement officer. . . . The board's appellate function is not advanced by the substitution of an automatic approval for a decision of an appeal on its merits." Id., 445.

The plaintiffs argue that *Leo Fedus & Sons Construction Co.* should be limited to actions involving a zoning board of appeals as opposed to a planning and zoning commission. We agree for two reasons. The first reason is that the issue of the *Leo Fedus & Sons Construction Co.* case as certified was specifically limited to whether the automatic approval doctrine applies to applications to a zoning board of appeals that require a public hearing, and only that question was answered. The second reason is that we conclude that *SSM Associates Ltd. Partnership* v. *Plan & Zoning Commission*, 211 Conn. 331, 337, 559 A.2d 196 (1989), controls the present case.

The only question certified and decided in *SSM Associates Ltd. Partnership* was whether the Appellate Court acted improperly "in concluding that automatic approval of a site plan by lapse of sixty-five days after its submission pursuant to General Statutes § 8-7d (b) also resulted in automatic approval of the special permit zoning application, which had included the site plan as a supporting document pursuant to the zoning regulations?" (Internal quotation marks omitted.) Id., 335. In

*SSM Associates Ltd. Partnership*, the defendants claimed, as the commission claims in this case, that the time constraints for site plan approval do not apply to approvals for special permits. *SSM Associates Ltd. Partnership* held that where the plaintiffs' application for site plan approval was inseparable from the application for a special permit, the defendant commission's failure to act within sixty-five days triggered automatic approval of both in accordance with §§ 8-3 (g) and 8-7d (b). The court explained that "[b]y stipulation before trial, the defendants agreed that, in this case, the application for a special permit 'includes submission of a site plan which is inseparable from the requirement that the plaintiffs secure a special permit.' As a result of this stipulation, the defendants have no factual basis for mounting a theoretical distinction between a special permit and a site plan." Id., 336.

The present case involves two site plans. The first, discussed in part I of this opinion, was filed by Center Shops for a convenience store. The second site plan accompanied the individual plaintiffs' application for a special permit, and it is this second site plan with which we are concerned in this part of the opinion. The parties stipulated to the fact that the special permit application contained other documents and that Center Shops filed one site plan and the individual plaintiffs another site plan. Both site plans are attached to the trial court's memorandum of decision and are cited in the stipulation of facts. The plaintiffs alleged in their complaint and the commission admitted that "pursuant to Section V of the Zoning Regulations of the Town of East Granby, gasoline service stations are permitted in the business zone subject to the granting of a special permit and approval of a site plan by the commission."

Although the parties did not stipulate to the inseparability of the site plan and the special permit, it is obvious on these facts, as in *SSM Associates Ltd. Partnership*,

that the special permit and the site plan, which was required to be filed with it by the commission itself, were inseparable and, as such, were automatically approved in accordance with §§ 8-3 (g) and 8-7d (b).

The present case is two steps removed from *Leo Fedus & Sons Construction Co.*. It does not involve a zoning board of appeals, and it concerns a special permit filed with a site plan accompanying it, whereas *Leo Fedus & Sons Construction Co.* concerned a site plan only.

As an intermediate appellate court, it is not our function to extend the holding of *Leo Fedus & Sons Construction Co.* in view of the holding in *SSM Associates Ltd. Partnership*. We are bound by what our Supreme Court has decided and it is not within our realm to conclude that our Supreme Court meant to overrule *SSM Associates Ltd. Partnership* in *Leo Fedus & Sons Construction Co.*, but did not.

We hold that the trial court correctly ordered a judgment of mandamus for the individual plaintiffs and for Center Shops.

The judgment is affirmed.

In this opinion the other judges concurred.