CENTER SHOPS OF EAST GRANBY, INC., ET AL.
*v.* PLANNING AND ZONING COMMISSION OF
THE TOWN OF EAST GRANBY ET AL.
(SC 16110)

McDonald, C. J., and Borden, Norcott, Katz and Sullivan, Js.

Argued February 17—officially released May 16, 2000

*Donald R. Holtman*, for the appellants (defendants).

*John W. Bradley, Jr.*, with whom was *Louis B. Rome*, for the appellees (plaintiffs).

*Opinion*

NORCOTT, J. This appeal arises out of a mandamus action brought to compel the defendants, the planning and zoning commission of the town of East Granby (commission), the town of East Granby (town), and the East Granby planning and zoning director: (1) to grant an application for a special permit and approve a site plan sought in connection with the construction of a gasoline service station/convenience store on one parcel of land; and (2) to approve of a revised site plan for an adjoining parcel of land allowing the construction of an entrance to, and exit from, the gasoline service station/convenience store, as well as parking for its customers. The dispositive issue in this appeal is whether a site plan is inseparably entwined with an application for a special permit to which it is related, thereby ensuring that General Statutes §§ 8-3 and 8-7d, which provide for automatic approval of site plan applications, would apply equally to the submission of a site plan and to its related special permit. The Appellate Court answered this question in the affirmative. *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, 52 Conn. App. 763, 780, 727 A.2d 807 (1999). We granted the defendants' petition for certification to appeal, limited to the following issue: "Whether the Appellate Court properly affirmed the decision of the trial court that applications for special permits are deemed automatically approved upon the failure of a planning and zoning commission effectively to act thereon within the time periods specified by law?" *Cen-*

*ter Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, 249 Conn. 906, 733 A.2d 223 (1999). We now reverse the judgment of the Appellate Court.

The following facts were stipulated to by the parties. The plaintiffs are the owners of two abutting parcels of land in the town. The individual plaintiffs, Harold L. Pierce, Michael B. Guarco and Philip D. Main, are coowners of a 0.45 acre parcel of land on which they sought to construct a building housing a gasoline service station and a convenience store. The named plaintiff, Center Shops of East Granby, Inc. (Center Shops), owns an adjoining parcel on which it sought to construct an entrance and exit to serve the gasoline service station/convenience store, as well as several parking spaces for use by customers of the gasoline service station/convenience store. Both parcels are located in a business zone subject to the zoning regulations of the town.[1] The plaintiffs B and D Petroleum Sales, Inc., and Decker and Company (Decker) are agents for the plaintiff property owners.

In October, 1995, the plaintiff property owners retained the services of Decker, a Massachusetts corporation, to act as their agent in connection with their applications for site plan approval and a special permit to construct a gasoline service station/convenience store and revised site plan approval to allow for ingress to, and egress from, the gasoline service station/convenience store and for parking spaces for its customers. On September 23, 1996, Decker filed with the commission an application for a special permit accompanied by a site plan as to the parcel owned by Pierce, Guarco and Main, designated application 96-17, and also filed an application for the approval of a site plan relating to the parcel owned by Center Shops, designated application 96-16. On October 30, 1996, Decker agreed to a sixty-five day extension for the commission to take

---

[1] Pursuant to the town zoning regulations, gasoline service stations are permitted in a business zone, subject to the granting of a special permit and approval of a site plan by the commission, and retail stores are permitted in a business zone, subject only to the approval of a site plan by the commission.

action on the site plan application of Center Shops in order that the consideration of the revised site plan application would coincide with the consideration of the special permit application and site plan approval for the gasoline service station/convenience store.

The commission scheduled a public hearing on the application for a special permit and approval of a site plan for the gasoline service station/convenience store on November 26, 1996.[2] At that hearing, Decker withdrew the applications of the corporate and individual plaintiffs because they needed to obtain an inland wetlands permit. The commission agreed to treat the withdrawn applications as immediately resubmitted and received without payment of additional fees. The commission treated the applications as new and they were renumbered from 96-17 and 96-16, to 96-22 and 96-21, respectively. On January 10, 1997, the town's inland wetlands agency granted a permit to the plaintiffs with conditions.

Following a request from the commission, dated January 8, 1997, Decker agreed in writing to a one week extension to the start of the required public hearing on the application for a special permit and the approval of the site plan for the gasoline service station/convenience store. The public hearing was then scheduled for February 4, 1997.[3] On January 28, 1997, the commission published a notice of the public hearing to be held on

---

[2] There are two site plans involved in this case. One site plan accompanied the special permit application of the individual plaintiffs for a gasoline service station/convenience store, and the other site plan is the revised site plan of Center Shops seeking to construct an entrance, an exit, and parking spaces. "The parties stipulated to the fact that the special permit application contained other documents and that Center Shops filed one site plan and the individual plaintiffs filed another site plan." *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, supra, 52 Conn. App. 779. Action on the revised site plan did not require a public hearing, whereas action on the special permit and approval of the site plan for a gasoline service station/convenience store did require a public hearing because gasoline service stations are not a permitted use.

[3] Because the applications were received on November 26, 1996, the sixty-five day period set forth in § 8-7d, together with the seven day extension agreed to by the plaintiffs as to the public hearing on the special permit application, expired on February 6, 1997.

application 96-22.[4] The notice, however, was not timely published as required by § 8-7d.[5] At the hearing on February 4, 1997, the commission continued the public hearing on the special permit until February 25, 1997, to allow for republication of the notice.

On February 13 and 20, 1997, the commission published notice of the public hearing scheduled for February 25, 1997. This notice did not state the time of the hearing as required by General Statutes § 8-3c (b).[6] At the February 25, 1997 hearing, the plaintiffs did not participate and refused to agree to any further extensions. At its regularly scheduled meeting on April 1, 1997, the commission met and denied application 96-22, the plaintiffs' application for a special permit and approval of a site plan for a gasoline service station/convenience store. It also denied application 96-21, Center Shops' application for approval of its revised site plan showing an entrance, exit and parking spaces to

[4] The notice also did not state the time of the hearing as required by General Statutes § 8-3c (b), but this defect was not included in the stipulation of the parties.

[5] General Statutes § 8-7d provides in relevant part: "(a) Except as provided in subsection (b) of this section, in all matters wherein a formal petition, application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter and a hearing is required on such petition, application, request or appeal, such hearing shall commence within sixty-five days after receipt of such petition, application, request or appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearing. The petitioner or applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of any such period shall not be for longer than the original period as specified in this subsection, or may withdraw such petition, application, request or appeal.

"(b) Whenever the approval of a site plan is the only requirement to be met or remaining to be met under the zoning regulations for any building, use or structure, a decision on an application for approval of such site plan shall be rendered within sixty-five days after receipt of such site plan. The applicant may consent to one or more extensions of such period, provided the total period of any such extension or extensions shall not exceed two further sixty-five-day periods, or may withdraw such plan. . . ."

[6] General Statutes § 8-3c (b) provides in relevant part: "Notice of the time and place of such hearing [for a special permit] shall be published . . . at least twice, at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before the date of such hearing. . . ."

be used in connection with the gasoline service station/ convenience store.

On May 8, 1997, the plaintiffs brought this mandamus action against the defendants, claiming that the commission violated §§ 8-3c[7] and 8-7d. The plaintiffs alleged that notices of the meetings on the special permit, and its accompanying site plan for a gasoline service station/ convenience store, were legally defective because they did not state the time of the hearing, and one notice was published only eight days before the scheduled hearing of which it purported to give notice. Center Shops also alleged that the commission failed to render a decision on its revised site plan within sixty-five days of receiving the plan. The plaintiffs claimed that the purported hearings held on February 4 and 25, 1997, were nullities and that the statutory violations resulted in automatic approval of both the application for a special permit and site plan approval for a gasoline service station/convenience store and the application for revised site plan approval allowing construction of an entrance, exit and parking spaces. The trial court agreed with the plaintiffs and granted the relief requested. The Appellate Court affirmed the judgment of the trial court, concluding that Center Shops' revised site plan application was automatically approved pursuant to § 8-3 (g)[8] because the commission had failed to act within the time provided in § 8-7d, and also concluding that the denial of the individual plaintiffs' applica-

---

[7] General Statutes § 8-3c provides in relevant part: "(b) The zoning commission or combined planning and zoning commission of any municipality shall hold a public hearing on an application or request for a special permit or special exception, as provided in section 8-2 . . . . The commission shall not render a decision on the application until the inland wetlands agency has submitted a report with its final decision to such commission. . . . Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice . . . . Such commission shall decide upon such application or request within the period of time permitted under section 8-7d. Whenever a commission grants or denies a special permit or special exception, it shall state upon its records the reason for its decision. . . ."

[8] General Statutes § 8-3 (g) provides in relevant part: "Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. . . ."

tion for a special permit and approval of the site plan was void as a result of the commission's failure to provide proper notice and that, consequently, the individual plaintiffs' site plan warranted automatic approval pursuant to § 8-3 (g). *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, supra, 52 Conn. App. 772–80. Concluding that the individual plaintiffs' site plan application and the special permit application were inseparable, the Appellate Court held that the special permit application also was automatically approved pursuant to §§ 8-3 (g) and 8-7d. Id., 780. We granted certification to review the Appellate Court's holding with respect to the automatic approval of the individual plaintiffs' application for a special permit.

Upon appeal before this court, the plaintiffs initially remind us that we previously have concluded that §§ 8-3 (g) and 8-7d (b), which provide for the automatic approval of site plan applications, are applicable to the submission of a site plan that is inseparable from an application for a special permit. *SSM Associates Ltd. Partnership* v. *Plan & Zoning Commission*, 211 Conn. 331, 336–37, 559 A.2d 196 (1989). Indeed, as both parties to the present case suggest, our decisions in cases such as *SSM Associates Ltd. Partnership* and its progeny have led to some confusion in this particular area of the law. It has been noted that "the concept of a site plan has become muddled, which has led to a confusing series of decisions in the Connecticut Appellate and Supreme Courts. Specifically, the problem lies in the difficulty in distinguishing between a site plan application and a special permit application." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 181. We attempt to resolve this confusion here.

In *SSM Associates Ltd. Partnership* v. *Plan & Zoning Commission*, supra, 211 Conn. 336, the parties stipulated before trial that the site plan and special permit applications were inseparable. Accordingly, we noted that "the application for a special permit includes submission of a site plan which is inseparable from the

requirement that the [p]laintiffs secure a special permit." (Internal quotation marks omitted.) Id. We concluded that "[a]s a result of this stipulation, the defendants have no factual basis for mounting a theoretical distinction between a special permit and a site plan. Indeed, as the plaintiffs remind us, the defendants in effect conceded the absence of such a factual distinction in their pleadings at trial. . . . The plaintiffs have never filed, and were never asked to file, a separate application for a special permit." Id., 336–37. Thus, in *SSM Associates Ltd. Partnership*, it was this critical lack of distinction between the application for the site plan and the application for the special permit—particular to the factual scenario at hand—that allowed "the Appellate Court correctly [to conclude] that the commission's failure to act within sixty-five days on the plaintiffs' application, *whether it be denominated a special permit or a site plan application,* triggered its automatic approval in accordance with §§ 8-3 (g) and 8-7d (b)." (Emphasis added.) Id., 337.

The narrow, fact-bound determination of *SSM Associates Ltd. Partnership*, however, is distinguishable from the present case. Here, there was no such stipulation intertwining the site plan application with the application for the special permit. The plaintiffs were required to file an application for a special permit for the gasoline service station. We are not unmindful of the fact that "[p]ursuant to the East Granby zoning regulations, gasoline service stations are permitted in a business zone, subject to the granting of a special permit *and* approval of a site plan by the commission . . . ." (Emphasis added.) *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, supra, 52 Conn. App. 764 n.2. Unlike in *SSM Associates Ltd. Partnership*, the applications in the present case are separate, in accordance with § X (A) (1) (c) of the East Granby zoning regulations, which provides that "[b]efore the Commission approves a Special Permit, it shall determine that: the accompanying Site Plan application is in conformance with the applicable provi-

sions of these Regulations . . . ." It is also noteworthy that in *SSM Associates Ltd. Partnership,* the application for a special permit was for the construction of an office building on a property designated a "Designed Research District," for which construction was permitted without special approval. *SSM Associates Ltd. Partnership* v. *Plan & Zoning Commission,* supra, 211 Conn. 333. A hearing was not required to be held on the application and, therefore, the special permit in *SSM Associates Ltd. Partnership* was not the kind of special permit at issue in the present case, where the special permit is for a use not permitted as of right; it is for a use—namely, the construction of a gasoline service station—that *must,* under the town zoning regulations, be scrutinized by the commission and reviewed at a required public hearing.

For the purposes of clarification, we conclude that this court's rationale in *SSM Associates Ltd. Partnership* is limited to the narrow factual pattern presented in that case: when the application for the special permit is integral to and virtually indistinguishable from the application for the site plan, and when the use sought is a permitted use such that a public hearing is not required, the statutory provisions regarding automatic approval are activated. In the absence of such facts, however, and unless otherwise set forth in the relevant town regulations, the special permit and the site plan are not inseparable and, therefore, do not meld into a single entity warranting such statutory procedure. The plaintiffs' argument in this case is flawed in that it completely denudes the special permit of its particular status. "A specially permitted use enjoys a unique status in a town's planning and zoning scheme because it generally is not restricted to a particular zoning district. 'The basic rationale for the special permit [is] . . . that while certain [specially permitted] land uses may be generally compatible with the uses permitted as of right in particular zoning districts, their nature is such that their precise location and mode of operation must be regulated because of the topography, traffic problems,

neighboring uses, etc., of the site. Common specially permitted uses, for example, are hospitals, churches and schools in residential zones. These uses are not as intrusive as commercial uses would be, yet they do generate parking and traffic problems that, if not properly planned for, might undermine the residential character of the neighborhood. If authorized only upon the granting of a special permit which may be issued after the [zoning] board is satisfied that parking and traffic problems have been satisfactorily worked out, land usage in the community can be more flexibly arranged than if schools, churches and similar uses had to be allowed anywhere within a particular zoning district, or not at all.' T. Tondro, [supra, pp. 175–76]." *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, 222 Conn. 607, 612–13, 610 A.2d 1205 (1992). The factual circumstances in *SSM Associates Ltd. Partnership*—specifically, the critical combination of both the town zoning regulations at issue in that case (requiring a special permit application for a permitted use) and the factual stipulations made by the parties prior to trial—are not representative of a common link between special permits and site plans. To read it as such, as the Appellate Court did in the present case, is improper in that it renders the special permit a nullity.

Our decision here is distinguishable from that of the Appellate Court in *Carr* v. *Woolwich*, 7 Conn. App. 684, 510 A.2d 1358 (1986).[9] In *Carr*, the Appellate Court noted that "§ 8-3 (g) provides in relevant part: 'The zoning regulations may require that a site plan be filed with the commission . . . to aid in determining the conformity of a proposed building, use or structure with specific proposed regulations. A site plan may be modified or denied only if it fails to comply with requirements already set forth in the regulations. Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the

---

[9] In *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 446 n.7, 623 A.2d 1007 (1993), we overruled *Carr* to the extent that it was inconsistent with our decision there.

period in section 8-7d.' We note that there is an inconsistency in the use of the term, 'site plan,' between the first and third sentences of this section. The first sentence connotes that the site plan is but a part of the application approval process, namely, as an aid in determining whether a proposed use conforms to the regulations. The third sentence contemplates automatic approval of a site plan by the passage of time, as if approval of the site plan carries with it approval of the entire application with respect to which, under the first sentence, the site plan is simply an aid to determine the conformity of the proposed use with the regulations. We need not resolve this inconsistency here, however, because in this case we view the plaintiff's site development plan as inseparable from, and part and parcel of, its accompanying documents." Id., 699–700. Accordingly, our decision in the present case resolves exactly the issue that the court in *Carr* did not need to address: when a site plan is separable from its accompanying documents and the special permit application is for a use not permitted as of right, the provisions of § 8-3 (g) are not applicable and the time constraints specified in § 8-7d do not control.

We note, however, that the Appellate Court correctly declined to extend our holding in *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 623 A.2d 1007 (1993). In that case, the plaintiffs claimed that they were entitled to the automatic approval of their site plan application to permit the construction of an asphalt plant in Colchester because the town zoning board of appeals wrongfully believed that it lacked jurisdiction over the appeal and, therefore, failed to hold a timely public hearing pursuant to § 8-7d. Id., 434. The town zoning commission previously had denied the plaintiffs' application because of safety and environmental concerns. Id., 435. The plaintiffs had appealed from the denial to the zoning board of appeals. Id. In the meantime, the zoning commission determined that asphalt plants were no longer permitted to be built in Colchester and, consequently, the board of appeals

concluded that the appeal regarding the construction of an asphalt plant in Colchester was moot and "left [the zoning board of appeals] with no jurisdiction to act on the [plaintiffs'] appeal." Id. The plaintiffs then sought a writ of mandamus to compel the zoning board of appeals to issue a certificate approving their site plan application because it had failed to fulfill the statutory obligations of § 8-7d. Id., 436. The trial court granted the plaintiffs' requested relief and the Appellate Court affirmed. Id., 434. This court reversed the judgment of the Appellate Court, concluding that zoning boards of appeals are not subject to the automatic approval doctrine. Id., 446. "Zoning boards of appeals do not perform the same function as zoning commissions. Zoning boards of appeals do not adjudicate initial land use applications, but review those already acted upon by a municipality's zoning commission or enforcement officer. . . . The board's appellate function is not advanced by the substitution of an automatic approval for a decision of an appeal on its merits." Id., 445.

As the Appellate Court correctly observed here, "[t]he present case is two steps removed from *Leo Fedus & Sons Construction Co.* It does not involve a zoning board of appeals, and it concerns a special permit filed with a site plan accompanying it, whereas *Leo Fedus & Sons Construction Co.* concerned a site plan only." *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, supra, 52 Conn. App. 780.

Where, as here, the special permit application necessarily must contain a site plan, that fact, by itself, does not trigger automatic approval of either the special permit or its accompanying site plan, pursuant to §§ 8-3 (g) and 8-7d, when the commission does not meet the time limits set forth by § 8-3c (b). Automatic approval would negate the meaning that we have long attached to the concept of a special permit. By virtue of its unique status, a special permit for a purpose not permitted as of right necessarily must be considered by a town's planning and zoning commission. It would be folly for

a party to escape the categorization of a special permit merely because of bureaucratic error. Such a draconian result is unwarranted and unreasonable in that the public—and the environment—are those that possibly would suffer from such an outcome.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court, and to remand the case to the trial court with direction to render judgment for the defendants.[10]

In this opinion the other justices concurred.

[10] Although our grant of certification concerned only the individual plaintiffs' application for a special permit and approval of the site plan that accompanied it, we reverse the judgment of the Appellate Court as to Center Shops' application for a revised site plan as well, due to the fact that the two applications, although filed by separate legal entities, concern a single project. We note that at oral argument before the Appellate Court, the plaintiffs conceded, in response to a question by Judge Schaller, that approval of Center Shops' revised site plan was of no benefit to them without approval of the individual plaintiffs' application for a special permit and approval of the site plan for the gasoline service station/convenience store.