[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff North American Family Institute (NAFI) appeals from the decision of the defendant Litchfield Planning Zoning Commission ("commission") denying its application for a site plan and special exception. The commission acted under General Statutes § 8-2, and NAFI appeals pursuant to General Statutes § 8-8. On August 22, 2000, the court (Walsh, J.) granted intervenor status to Peter Howe, Anthea Disney, John Healey, Sandy Healey, Elizabeth Murray, Andrew Muray and George Alvord, Jr. ("intervenors"), who are owners of residential property in the neighborhood of the subject property. For the reasons stated below, the court finds the issues in favor of the defendants.
The following facts pertinent to this decision are not disputed and are found in the record. "NAFI is a private nonprofit human service agency specializing in community based care for youths and adults with emotional, behavioral and/or delinquency problems." (Return of Record (ROR) 5, p. 26.) NAFI operates a residential program called Touchstone for adolescent females in the care and custody of the Department of Children and Families (DCF). The Touchstone program provides community based residential treatment services. NAFI runs a Touchstone program at a site on East Litchfield Road, Litchfield which is comprised of some 53.788 acres.
(ROR 2, p. 1.)
Prior to NAFI's purchase of the site in May 1996, the site was called The Country Place which was a residential psychiatric clinic. The Country Place was operating in the residential zone as a pre existing non-conforming use. NAFI received zoning approval in 1996 to operate Touchstone at Country Place. The site is located in an R80 zoning district. NAFI operated the program since 1996, with twenty female residents and twenty nine staff members on site. CT Page 14518
On September 14, 1998, NAFI submitted a site plan approval/special exception application, which was officially received on September 21, 1998, seeking an amendment to increase the number of residents to forty and to increase the number of staff to thirty nine. The proposal also included additional parking spaces and additional exterior lighting. Existing buildings would be renovated to accommodate the proposed increase in beds. (ROR 2, p. 2.) Notice of a public hearing to be held on October 19, 1998, was published on October 6, 1998, and October 15, 1998, in the Waterbury Republican American. (ROR 3.) The hearing was continued to November 15, 1998, and then to December 21, 1998. When it concluded on February 1, 1999, the commission met and voted (7-0) to deny the application. (ROR 38.) On February 5, 1999, notice of the decision was published. NAFI appealed this decision on February 19, 1999.
The answer and return of record were filed on May 24, 1999 and May 27, 1999. The parties agreed that an extension of time to file briefs should be sought because of a pending Supreme Court case. Briefs were filed on July 17th, August 15th, August 21st, September 1st, and September 11, 2000. The hearing took place on September 11, 2000.
The plaintiff raises a number of issues in its appeal. First, it argues that the commission's failure to close the public hearing on NAFI's application in a timely manner under General Statutes § 8-7d results in automatic approval of the application. Second, NAFI claims the reasons for the denial are insufficient and unsupported by the record. Third, NAFI argues that approval of the site plan results in approval of the special exception. Fourth, it claims that the commission's determination that NAFI was not an educational or instructional facility within the meaning of the applicable regulations was not supported by the second Fifth, it claims that determination by the commission that the increase in residents to forty would have a detrimental effect on the neighborhood and property value was not supported by the record. Sixth, it claims that the commission's determination that the water supply would be inadequate was not supported by the record. Seventh, NAFI claims that the commission's conclusion that increased vehicular traffic would be hazardous or detrimental to the neighborhood was not supported by the record. Eighth, it claims that the determination that the proposed exterior lighting would not be compatible with the adjacent properties was not supported by the record. Finally, NAFI argues that the commission's finding that there would be an undue burden on town services is not supported by the record or permitted by the regulations.
Prior to addressing the merits of the plaintiff's appeal, the court must determine if the plaintiff is an aggrieved person. Aggrievement is required in order for this court to have jurisdiction to decide the CT Page 14519 appeal. See General Statutes § 8-8(b). Under General Statutes §8-8(a)(1) an aggrieved person is:
 . . . a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, "aggrieved person" includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board.
Here, NAFI is the applicant whose application is the subject of this appeal. The court finds further that based on the testimony of Tammy Snead, regional director of NAFI, that the plaintiff continues to own the subject property. Accordingly, the court finds that the plaintiff has established itself as an aggrieved person.
The scope of this court's review of the commission's decision is limited to a determination of whether the commission acted arbitrarily, illegally or unreasonably. If there is substantial evidence in the record to support the board's action, the action must be sustained. See PropertyGroup, Inc. v. Planning Zoning Commission, 226 Conn. 684, 697 (1993).
 Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs.
(Internal quotation marks omitted.) Raczkowski v. Zoning Commission,53 Conn. App. 636, 640, cert. denied, 250 Conn. 921 (1999), quoting Bloomv. Zoning Board of Appeals, 233 Conn. 198, 206 (1995).
Further, in cases as here where the zoning authority has set forth reasons for its decision this court "may only determine if the reasons given are supported by the record and are pertinent to the decision, and the authority's action must be sustained if even one of the stated reasons is sufficient to support it." (Internal quotation marks omitted.)Cybulski v. Planning Zoning Commission, 43 Conn. App. 105, 111 cert. CT Page 14520 denied, 239 Conn. 949 (1996).
The court first turns to the procedural issue raised by the plaintiff. That issue rests on the commission's failure to close the public hearing within the time constraints of General Statutes § 8-7d(a), which reads,
 Except as provided in subsection (b) of this section, in all matters wherein a formal petition, application, request or appeal must be submitted to a zoning commission, planning and zoning commission or zoning board of appeals under this chapter and a hearing is required on such petition, application, request or appeal, such hearing shall commence within sixty-five days after receipt of such petition, application, request or appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearing. The petitioner or applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of any such period shall not be for longer than the original period as specified in this subsection, or may withdraw such petition, application, request or appeal.
NAFI argues that because the commission closed the public hearing December 21, 1998, three days beyond the statutory thirty day period, its application for the special exception and site plan results in an automatic approval.[1] NAFI also argues that under recent case law, the commission's failure to act on the site plan within time period set forth in § 8-7d results in the automatic approval of the site plan which would result in the approval of the special exception as an inseparable part of the site plan.[2]
The plaintiff's procedural arguments rest in large part upon treating the site plan as an application indistinguishab]e from the application for a special exception. The applicable zoning regulation does not treat these applications as indistinguishable. Under the Litchfield zoning regulations, a site plan must be submitted along with the application for a special exception. (ROR, 46, Article VIII, ¶ 3.)[3]
Neither the statutory provisions of General Statutes § 8-7d(a) nor the most recent applicable case law support NAFI's first argument that the failure to close the public hearing within thirty days results in CT Page 14521 automatic approval of the special exception and site plan. The language of § 8-7d(a) contains no provision for automatic approval. See LeoFedus Sons Construction Co., Inc. v. Zoning Board of Appeals,225 Conn. 432, 441 (1993). In Lauver v. Planning Zoning Commission,60 Conn. App. 504 (2000), the Appellate Court addressed a factual situation similar to this case. Relying heavily upon the case cited by the parties in this case, Center Shops of East Granby, Inc. v. Planning Zoning Commission, 253 Conn. 183 (2000), the court held that automatic approval was not an appropriate remedy:
 The court in Center Shops of East Granby, Inc., noted that, generally, applications for site plans are separate from applications for special permits. In the absence of facts showing that the special permit application is for a permitted use for which no hearing is required and that the special permit application is integral to and virtually indistinguishable from the site plan application, "and unless otherwise set forth in the relevant town regulations, the special permit and the site plan are not inseparable and, therefore, do not meld into a single entity warranting [application of the statutory provisions regarding automatic approval]. Id., 191. "A specially permitted use enjoys a unique status in a town's planning and zoning scheme because it generally is not restricted to a particular zoning district. The basic rationale for the special permit [is] . . . that while certain [specially permitted] land uses may be generally compatible with the uses permitted as of right in particular zoning districts, their nature is such that their precise location and mode of operation must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site. Common specially permitted uses, for example, are hospitals, churches and schools in residential zones. These uses are not as intrusive as commercial uses would be, yet they do generate parking and traffic problems that, if not properly planned for, might undermine the residential character of the neighborhood. If authorized only upon the granting of a special permit which may be issued after the [zoning] board is satisfied that parking and traffic problems have been satisfactorily worked out, land usage in the community can be more flexibly arranged than if schools, churches and similar uses had to be allowed anywhere within a particular zoning district, or not at all." CT Page 14522 (Internal quotation marks omitted.) Id., 191-92.
 "Where, as here, the special permit application necessarily must contain a site plan, that fact, by itself, does not trigger automatic approval of either the special permit or its accompanying site plan, pursuant to §§ 8-3(g) and 8-7d, when the commission does not meet the time limits set forth in § 8-3c(b)." Id.
Lauver v. Planning Zoning Commission, supra, 514-15.
In light of this most recent appellate authority, the court rejects NAFI's argument that an automatic approval should result from the commission's failure to comply within the time constraints of § 8-7d. The court notes, as has all counsel in this case, that this area of the law is particularly confusing to litigants, lawyers and the bench, and the court appreciates the efforts of elucidation by counsel in their memoranda. See Center Shops of East Granby, Inc. v. Planning ZoningCommission, supra, 253 Conn. 189.
The court has reviewed the entire record in this case and has considered the issues raised by NAFI. Because it finds substantial evidence to support one of the articulated reasons underlying the commission's decision, however, it does not address every issue raised.
NAFI filed its application for a special exception/site plan under the zoning regulation permitting educational uses in the R-80 zone by special exception. A special exception "allows a property owner to use his property in a maimer expressly permitted by the local zoning regulations." (Citations omitted; internal quotation marks omitted.) Raczkowski v.Zoning Commission, supra, 53 Conn. App. 639. That proposed use must "satisfy standards set forth in the zoning regulations themselves. . . ." Id. It is the commission's role to "determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied." Id.
A site plan is a
 plan filed with a zoning commission or other municipal agency or official to determine the conformity of a proposed building, use or structure with specific provisions of the zoning regulations. It is a physical plan showing the layout and design of a proposed use, including structures, parking areas and open space and CT Page 14523 their relation to adjacent uses and roads, and containing the information required by the zoning regulations for that use. The agency has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated by reference. A site plan may be modified or denied only if it fails to comply with requirements already set forth in the regulations.
(Citations omitted; internal quotation marks omitted.) ConnecticutResources Recovery Authority v. Planning Zoning Commission,46 Conn. App. 566, 570. cert. denied, 243 Conn. 935 (1997).
The commission concluded that NAFI's application should be denied because the proposed use was not primarily an educational use. Specifically, it found,
 This primary use, as a residential treatment program, is not specifically allowed by the regulations in the R80 zone per Article V Section 4, Table of Uses — Residential Zones.
(ROR, 37, p. 1.)
In support of that finding it noted,
 The educational use, although it is an important component of the residential treatment program, is not the primary use of the facility which is a child care facility/residential treatment facility.
(ROR, 37, p. 1.)
There is substantial evidence in the record to support this reason for the denial. In support of its application, NAFI submitted documentation describing the facility as a child care facility and a residential treatment facility. (ROR 2.). The record also includes evidence that the primary function of the facility is to provide residential treatment services to adolescent females who are committed as delinquent to the Department of Children and Families. (ROR 5.)[4] Thus, the commission could reasonably conclude that the proposed use was not the educational use allowed under the regulations. This court will not substitute its judgment for the commission's when a valid reason is supported by the record. CT Page 14524
The appeal is dismissed and the action of the commission affirmed.
DiPentima, J.